## John GROSS, Appellant,

### v.

### Waldo SEDERSTROM, Ardell Hanneman and Charles Myers, Appellees.

### No. 19942.

United States Court of Appeals, Eighth Circuit.

June 26, 1970.

J. B. Shultz, of Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., and Lammers & Lammers, Madison, S. D., for appellant.

William F. Clayton, U. S. Atty., Sioux Falls, S. D., and David R. Gienapp, Asst. U. S. Atty., for appellee.

Before MATTHES, LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The sole issue on this appeal is whether the lower court correctly found that the appellees were entitled to summary judgment by reason of their official immunity.

The appellant, John Gross, is the owner of a tract of land in Lake County, South Dakota, and the appellees are members of the Lake County Agricultural Stabilization and Conservation Service Committee. The appellant's application to participate in the 1966 Feed Grain Program was denied by the Lake County ASC Committee.[1] The denial was based, at least in part, on information received from the appellee, Waldo Sederstrom, a tenant on a portion of the appellant's land.

After the denial, the appellant brought action against Sederstrom and the two members of the County ASC Committee, Ardell Hanneman and Charles Myers, who had obtained the information from Sederstrom. The appellant alleged that Hanneman and Myers had solicited statements from Sederstrom, prior to the filing of his application to participate in the Program, which indicated that the appellant had forced Sederstrom to give up his tenancy by unreasonable and oppressive lease covenants. It was further alleged that Hanneman and Myers undertook this action with malice and with intent to injure the appellant. The appellant sought $368 actual damages and $15,000 exemplary damages.

After the case was removed to the United States District Court for the District of South Dakota,[2] Hanneman and Myers moved for summary judgment on the grounds that they had been acting within the scope of their authority as employees of the United States Department of Agriculture and were, therefore, immune from suit under the doctrine of official immunity. Various affidavits and depositions were presented at the hearing on the motion for summary judgment, both in support of and in opposi-

---

1. As a result of an appeal to the Department of Agriculture, the appellant was ultimately allowed to participate in the 1966 Feed Grain Program.

2. The appellant, citing Morgan v. Willingham, 383 F.2d 139 (10th Cir. 1967), appears to suggest that the removal to the federal court was improper. However, *Willingham* had been reversed by the Supreme Court. 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969), in a decision which makes it clear that the removal was proper.

tion to the motion. The following undisputed facts were established: (1) The appellees, Hanneman and Myers, were members of the Lake County ASC Committee. (2) On March 11, 1966, the appellant met with the County ASC Committee and indicated an interest in participating in the 1966 Feed Grain Program. (3) On March 21, 1966, Hanneman and Myers visited Sederstrom and obtained statements from him indicating that oppressive lease conditions were forcing him. to give up his tenancy. (4) On March 22, 1966, the Lake County ASC Office communicated to the State ASC Office its decision to deny the appellant the opportunity to participate in the 1966 Feed Grain Program. The reasons given for this decision were the appellant's action in forcing the tenant, Sederstrom, off the land and his intention to operate his farm on a custom hire basis. (5) On March 24, 1966, the State ASC Committee sent the appellant a letter which purported to deny his appeal from the decision of the County ASC Committee. (6) On March 25, 1966, the appellant signed, for the first time, his contract for participation in the 1966 Feed Grain Program.

The District Court granted the motion for summary judgment.[3] In his memorandum decision, Judge Nichol relied on the language and rationale of Myers v. Cromwell, 267 F.Supp. 12, 15 (D.Kan. 1967):

> " ' * * * The defendant here is entitled to summary judgment because officials of the Federal Government are not personally liable for alleged torts based upon acts, done within the scope of their duties, which necessarily involve the exercise of a judgment or discretion which public policy requires to be made without fear of personal liability.' "

Gross v. Sederstrom, Civ. 69–75 (D.S. D., filed May 26, 1968).

On appeal, the appellant argues that the lower court erroneously applied the doctrine of governmental immunity in granting the motion for summary judgment. He contends that Hanneman and Myers were not entitled to immunity because: (1) they were not federal employees; (2) their duties were ministerial rather than discretionary; (3) they acted outside the scope of their authority; and (4) their alleged malice negated the immunity defense and made summary judgment inappropriate.

In contending that Hanneman and Myers were not federal employees entitled to governmental immunity, the appellant relies on the decision in Lavitt v. United States, 177 F.2d 627 (2nd Cir. 1949).

We do not view Lavitt as controlling. This Court studied the structure of the A.S.C. Committees in Duba v. Schuetzle, 303 F.2d 570 (8th Cir. 1963), and found that a "hierarchy of command" had been established by the Secretary of Agriculture, with the entire structure, including the County Committee, functioning as a governmental agency. In reaching this result, the Court emphasized the overriding authority and control exercised by the Secretary of Agriculture and his appointees.

Our decision in Duba has been followed and relied on in Delgado v. Akins, 236 F.Supp. 202 (D.Ariz.1964), and United States v. Rasmussen, 222 F.Supp. 430 (D.Mont.1963). In Delgado, the court, in holding the office manager of the County A.S.C. Office to be a federal employee, specifically rejected the applicability of the Lavitt decision.

The District Court properly relied on Myers v. Cromwell, supra. There, the office manager for the County A.S.C. Committee was alleged to have made certain false statements while administering the 1965 Feed Grain Program. The court, in granting a motion for

---

3. The motion for summary judgment did not affect the status of appellee Sederstrom. The trial court, therefore, remanded the case back to the state court for further disposition between Gross and Sederstrom.

summary judgment, accepted the defendant's contention that the A.S.C. Committee structure was a governmental agency and that as office manager of the County Committee, he was an official of the federal government entitled to immunity from suit.

■ The appellant's contention that because the defendants in this case are elected Committee members they are outside the scope of the governmental immunity is not persuasive. The immunity in question applies to officials of the federal government. See, *e. g.*, Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959); Spalding v. Vilas, 161 U. S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896); Ove Gustavsson Contracting Co. v. Floete, 299 F.2d 655 (2nd Cir. 1962), cert. denied, 374 U.S. 827, 83 S.Ct. 1862, 10 L.Ed.2d 1050 (1963). As was stated in Barr v. Matteo, *supra*:

> "It is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted * * * which must provide the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity * * *."

*Id.* 360 U.S. at 573-574, 79 S.Ct. at 1340-1341.

Both elected officials and employees of the A.S.C. Program are entrusted with the type of duties in implementing the federal government's conservation programs which entitle them to the protection of official immunity.

■ The appellant's contention that the appellees were acting in a ministerial capacity rather than a judicial or discretionary capacity clearly lacks substance. The regulations outlining the duties of the County A.S.C. Committees gives them the broad responsibility for carrying out various government farm programs. 7 C.F.R. § 7.20. The type of investigation undertaken in this case was essential to implementation of the Feed Grain Program. It is precisely the type of discretionary activity that the doctrine of governmental immunity was intended to protect. The rationale for the distinction between ministerial and discretionary duties was explained in David v. Cohen, 132 U.S.App.D.C. 333, 407 F.2d 1268 (1969):

> "The test of whether a challenged action is ministerial or non-ministerial is not the office pre se or its height, but whether the function itself was of such discretionary nature that the threat of litigation would impede the official to whom it was assigned."

*Id.* at 1272.

The appellant's third contention is that the appellees are not entitled to immunity because they acted outside the scope of their authority. This contention is based on the fact that Hanneman and Myers interviewed Sederstrom and obtained his statements on March 21, 1966, four days before the appellant had officially signed a contract to participate in the 1966 Feed Grain Program. Since the regulation authorizing investigations states that they may be undertaken concerning " * * * representations [which] have been made on any forms filed under the Program * * *," the appellant argues that the appellees were acting outside the scope of their authority in interviewing Sederstrom prior to the filing of the appellant's contract to participate in the program.

■ We think such a narrow interpretation of the scope of the appellees' authority is inconsistent with the purpose of the doctrine of governmental immunity—to allow officials to exercise their authority without fear of personal liability. See generally, K. Davis, Administrative Law Treatise § 26.05 (1958).

In Barr v. Matteo, *supra*, the Supreme Court faced this question when the general manager of the Office of Rent Stabilization was sued for issuing press releases which allegedly were defamatory. While the Court was unable to rely on specific statutory or regulatory authority, it found the issuance of the press release to be " * * * an ap-

propriate exercise of the discretion which an officer of that rank must possess if the public service is to function effectively." Barr v. Matteo, *supra*, 360 U. S. at 574–575, 79 S.Ct. at 1341. Later, the Court set out a broad test to determine the scope of the immunity:

"The fact that the action here taken was within the *outer perimeter of petitioner's line of duty* is enough to render the privilege applicable * * *." (Emphasis added.)

*Id.* at 575, 79 S.Ct. at 1341.

In Norton v. McShane, 332 F.2d 855 (5th Cir. 1964), cert. denied, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965), the Court interpreted the "outer perimeter" test of Barr v. Matteo, *supra*, as meaning:

" * * * [T]he act must have more or less connection with the general matters committed by law to the officer's control or supervision, and not be manifestly or palpably beyond his authority."

*Id.* at 859. See also, Spalding v. Vilas, 161 U.S. 483, 498, 16 S.Ct. 631 (1896). Whichever expression of the test is used, it seems clear that the appellees were not acting outside the scope of their authority.

Lastly, the appellant contends that his allegations of malice are sufficient to pierce the cloak of governmental immunity. Again we disagree. The allegations of malice are general and indefinite in nature and are not supported by affidavit or deposition. Information contained in the appellant's affidavit suggests that the actions of the appellees were motivated by a strong policy opposing custom farming and that they believed this policy was justified under the Feed Grain Program. The appellees' affidavits and depositions indicate that the investigation was a customary practice, occurred in the normal course of their activities, and was made in response to the appellant's statement on March 11, 1966, that he desired to participate in the 1966 Feed Grain Program. In circumstances such as these, the cases are nearly unanimous in upholding the applicability of immunity despite the allegation of malice in the complaint. See, *e. g.,* Barr v. Matteo, *supra* 360 U.S. at 575, 79 S.Ct. 1335; Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959); Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L. Ed. 1019 (1951); Spalding v. Vilas, *supra*; Norton v. McShane, *supra*; Gregoire v. Biddle, 177 F.2d 579 (2nd Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). The bare allegations of malice here appear to be nothing more than strong assertions of error. See, K. Davis, Administrative Law Treatise § 26.04 (1958).

The appellant cites Kelley v. Dunne, 344 F.2d 129 (1st Cir. 1965), as supporting his position. However, that case is inapposite. There, the uncontradicted facts indicated that a postal inspector had knowingly made false representations in order to gain access to the premises and carry on an invalid search. No such specific or intentional wrongdoing is indicated here.

For the reasons stated above, the judgment of the lower court is affirmed.