**John C. GROSS, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 81–1519.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1981.

Decided April 23, 1982.

Rehearing and Rehearing En Banc Denied June 21, 1982.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C., Terry L. Pechota, U.S. Atty., Sioux Falls, S.D., Leonard Schaitman, Marc Johnston, Attys., Civ. Div., U.S. Dept. of Justice, Washington, D. C., for appellant.

Dennis C. McFarland, John N. Gridley, Sioux Falls, S.D., for appellee.

Before GIBSON, Senior Circuit Judge, BRIGHT, Circuit Judge, and LARSON,* Senior District Judge.

BRIGHT, Circuit Judge.

The United States appeals from an adverse judgment awarding John C. Gross $35,000. In his action under the Federal Tort Claims Act (the Act), 28 U.S.C. §§ 2671–2680 (1976), Gross sought damages for the intentional infliction of emotional distress by members of the Lake County Agricultural Stabilization and Conservation Service Committee (ASCS) growing out of actions taken to thwart Gross' participation in the United States Department of Agriculture's (USDA) feed grain program.

On appeal, the United States argues that Gross cannot pursue his present claim because (1) he is collaterally estopped by a prior judgment against him in the Court of Claims; (2) he failed to exhaust his administrative remedies for government action occurring before 1969; and (3) the statute of limitations bars his claim to the extent it is based upon actions that occurred before 1971. In addition, the United States maintains that Gross' cause of action is not cognizable under the Federal Tort Claims Act because his claim (a) arose out of the Government's alleged violation of its own regulations; (b) grows out of the alleged misperformance of a discretionary function; and (c) falls within the "intentional torts" exception of the Federal Tort Claims Act. Because it is unclear whether any tortious activity took place within the statute of limitations, we vacate the judgment and remand this action to the district court.

## I. Background.

The actions of the ASCS officials that underlie this lawsuit are set out in detail in the district court's opinion. *Gross v. United States,* 508 F.Supp. 1085 (D.C.S.D.1981). In short, the ASCS denied Gross participation in the feed grain program (FGP)[1] in 1965 and 1969 and withdrew its prior determination of his eligibility for the program for the years 1968, 1970, and 1971, demanding repayment for the funds it had paid Gross for those years. Gross alleged that the ASCS falsified statements and otherwise fraudulently attempted to deny him participation in the feed grain program when they knew or should have known that their actions would cause him emotional distress. We further develop the facts as they pertain to Gross' arguments on this appeal.

In 1968, Gross filed suit in federal court against two members of the ASCS Committee in their individual capacity for maliciously soliciting statements that resulted in the denial of his application to participate in the 1966 feed grain program. *See Gross v. United States, supra,* 508 F.Supp. at 1086 n.1. The district court granted the defendants' motion for summary judgment on the ground that the doctrine of official immunity shielded the ASCS officials from suit. This court affirmed. *Gross v. Sederstrom,* 429 F.2d 96 (8th Cir. 1970).[2]

In 1974, Gross filed suit in the Court of Claims seeking recovery for the wrongful withholding of feed grain program payments for the years 1968 through 1971. *Gross v. United States,* 505 F.2d 1271 (Ct.Cl. 1974). Gross alleged that the ASCS violated several of its own regulations in withholding the payments.[3] The Court of

---

* EARL R. LARSON, United States Senior District Judge, District of Minnesota, sitting by designation.

1. The program authorizes payments to farmers for diverting land from production of feed grains to approved conservation uses. *See Gross v. United States,* 505 F.2d 1271, 1272 (Ct.Cl.1974).

2. Gross also sued the tenant who gave the statement. After dismissing Gross' suit, the district court remanded the case to the state court for further proceedings against the tenant. *See Gross v. Sederstrom, supra,* 429 F.2d at 98 n.3.

3. Specifically, Gross alleged violations of 7 C.F.R. § 776.403 (Administration), .416 (Determinations of Compliance), .418 (Division of Diversion and Price Support Payments), .419(a)(2) (Tenant Participation), .425 (State Committee Responsibilities). *See Gross v. United States, supra,* 505 F.2d at 1275.

Claims granted the Government's motion for summary judgment after considering the applicable regulations.

Following the Court of Claims decision, Gross instituted the present action in 1975, alleging that ASCS members wrongfully denied him participation in the feed grain program for the years 1965 and 1969, and wrongfully rejected their prior acceptance of his participation for the years 1968, 1970, and 1971. He further alleged that these officials acted in violation of the regulations and with an intent to inflict emotional distress.[4] The district court granted partial summary judgment for the Government on the ground that the Court of Claims had already determined that the ASCS officials had not violated certain of the regulations and that, therefore, Gross was collaterally estopped from asserting violations of those regulations in the present suit.[5] After a bench trial, the district court held that the ASCS actions could constitute intentional infliction of emotional distress apart from whether those actions violated any regulations. The court further determined that the tort of intentional infliction of emotional distress did not fall within the "intentional torts" exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(h) (1976),[6] and that the acts of the ASCS officials were not protected by the discretionary function exception to the Act. See 28 U.S.C. § 2680(a) (1976).[7] The court concluded that Gross had made out a claim for intentional infliction of emotional distress, and awarded him $35,000 in damages. See Gross v. United States, supra, 508 F.Supp. at 1091–92.

## II. Discussion.

### A. Collateral Estoppel.

The Government argues that the adverse judgment of the Court of Claims, Gross v. United States, 505 F.2d 1271 (Ct.Cl.1974), bars Gross from relitigating the propriety of the ASCS actions. In the Court of Claims action, Gross sought to prove that the Government violated its own regulations[8] and, therefore, improperly denied him participation in the 1969 feed grain program and improperly required him to refund 1968, 1970, and 1971 feed grain program payments. The court, however, determined that the ASCS did not violate the regulations.

▮▮▮ The Government now maintains that the Court of Claims determination bars all attempts to attack the propriety of the ASCS actions for the years involved. The Government, however, misperceives the thrust of Gross' complaint, and, in the process, seeks to expand the effect of the Court of Claims judgment, giving it res judicata rather than collateral estoppel effect. Under the doctrine of collateral estoppel, a judgment in a previous action bars relitigation of only those issues actually litigated and necessary to the prior decision. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); 1B J. Moore, Federal Practice ¶ 0.441[2], at 3777 (1980). In the previous action, the Court of Claims addressed only Gross' eligibility for the feed grain program. It concluded that Gross had not established how the Government had violated the regulations, but did not independently determine

---

4. Specifically, Gross alleged violations of 7 C.F.R. §§ 775.403(b) (Inability to Modify Regulations), .418(a) (Division of Diversion and Price Support Payments), .418(c) (same), .419(b) (Tenant Participation), 780.2 (Definitions), .9(b) (Document Request). See Gross v. United States, supra, 508 F.Supp. at 1091.

5. The district court permitted Gross to assert that the Government violated 7 C.F.R. § 780.-2, .9(b), because he had not alleged the violation of those provisions in the Court of Claims suit. Gross does not challenge the grant of partial summary judgment in this appeal.

6. See note 20 infra.

7. Section 2680(a) excludes from coverage all acts or omissions "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (1976).

8. See note 3 supra.

what had happened between the ASCS and Gross. In fact, the Court of Claims inquiry was circumscribed because it considered itself bound by the factual determinations made by the USDA in determining Gross' ineligibility. See 7 U.S.C. § 1385 (1970).[9]

■ The district court in this case applied the doctrine of collateral estoppel to eliminate as a basis for Gross' present action the alleged violations of the regulations raised in the Court of Claims. The present suit, however, alleges the violation of regulations not previously asserted. Moreover, Gross predicates his theory of recovery on the intentional infliction of emotional distress by the ASCS and not simply on the violation of the regulations. Thus, Gross raises issues in the present case not addressed in the Court of Claims. Indeed, Gross could not have raised his present claim in the Court of Claims because that court's jurisdiction does not include suits based on torts. See 28 U.S.C. § 1491 (1976); Clark v. United States, 461 F.2d 781, 783 (Ct.Cl.), cert. denied, 409 U.S. 1028, 93 S.Ct. 465, 34 L.Ed.2d 322 (1972). Gross, therefore, is not collaterally estopped from raising his tort claim in this action.

### B. Administrative Claim.

■ The Government next maintains that Gross did not comply with the exhaus-

tion requirement of the Act with respect to actions of the ASCS occurring before 1969, and that the district court therefore lacked jurisdiction to consider the impact of those actions. The Government correctly observes that the prior presentation of an administrative claim is a jurisdictional prerequisite to a suit under the Act.[10]

We cannot agree, however, with the Government's narrow reading of Gross' administrative claim. While Gross based his administrative claim primarily on actions that began in 1969, he specifically noted that "the wrongful actions of the United States of America date back to at least 1965." Even though Gross did not detail the wrongful actions that occurred before 1969, his claim gave sufficient information to notify the Government of his claim and to give them a chance to settle. See Adams v. United States, 615 F.2d 284, 288–89 (5th Cir. 1980). Under these circumstances, Gross' claim is not barred by section 2675.

### C. Statute of Limitations.

The Government next asserts that the FTCA's statute of limitations bars Gross' action. Because Gross filed his administrative claim on August 7, 1973, it contends that the two-year statute of limitations, unless tolled, would bar recovery for ASCS actions occurring before August 7, 1971.[11]

---

9. Section 1385 states:
 The facts constituting the basis for any payment under * * * [the] feed grain set-aside program [ ] * * * [,] when officially determined in conformity with the applicable regulations prescribed by the Secretary or by the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government. [7 U.S.C. § 1385 (1970).]
 We do not read this finality provision to preclude inquiry into the factual determinations underlying the ASCS action in all cases. Instead, the section concerns only the scope of review of a challenged decision to include or exclude a producer from the program. Gross does not challenge that decision; instead, he alleges that the ASCS acted in a tortious manner. The district court therefore acted properly in taking evidence about the factual determinations underlying the ASCS actions.

10. Section 2675(a) provides:
 An action shall not be instituted upon a claim against the United States for money

damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

11. 28 U.S.C. § 2401(b) states that

 [a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or

The Government argues that the statute of limitations began to run when Gross discovered, or should have discovered his injury, *see United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), and contends that Gross' own statements indicate that he knew of his injury before August 7, 1971. On July 23, 1971, the Government notes, Gross told an investigator from the Office of the Inspector General (OIG) that he held the county and state ASCS Committees responsible for his continuing "family, financial, [and] social problems."

■ The Government's contention presents a question that cannot be resolved on the basis of the record before us. First, the ASCS actions in this case may have constituted a continuing tort. *See Cooper v. United States*, 442 F.2d 908, 912 (7th Cir. 1971) (continuing wrongful conduct may give rise to a continuing cause of action). The ASCS continually encroached upon Gross' interest in being free from intentionally inflicted emotional distress. The statute of limitations for a continuing tort generally runs from the date of the last tortious act. *Cf. Havens Realty Corp. v. Coleman*, —— U.S. ——, —— – ——, 102 S.Ct. 1114, 1125, 71 L.Ed.2d 214 (1982) (final Fair Housing Act violation brings action within limitations period). We therefore reject the Government's position, based on *Kubrick*, that the limitations period of the Federal Tort Claims Act runs from the time that Gross knew or should have known of his injury. *Kubrick* involved a medical malpractice action, not a continuing tort. 444 U.S. at 113, 100 S.Ct. at 355. Where the tortious conduct is of a continuing nature, the *Kubrick* rule does not apply. Under the

circumstances of this case, the focus should be on when the last tortious act occurred.

■ In the present case, we cannot determine whether a tortious act occurred within the statute of limitations. The district court made no clear finding concerning the tortious nature of the only allegedly tortious act of the ASCS occurring within the limitations period—the demand for a refund in November 1971. The record indicates that the ASCS Committee initially had approved Gross' participation after meeting with both Gross and his tenants. When it received an investigative report by the USDA's Office of Inspector General (OIG), however, the ASCS Committee demanded a refund. *Id.*

The district court found allegations in the report to be inconsistent with statements made under oath, and determined that the Committee based its decision to demand a refund on regulations from a manual that appeared inconsistent with the official regulations. The court, however, made no finding whether this incident constituted tortious action by the ASCS (*i.e.*, intentional infliction of emotional distress), or whether the investigation was proper and essentially true as to the facts stated therein. Unless the November 1971 demand for a refund involves tortious conduct by the ASCS, Gross' action falls outside the statute of limitations and must be dismissed. Because the district court made no specific findings on this issue, we remand this case to the district court for additional findings and, if necessary, for the taking of further evidence on the ASCS 1971 demand for refund.[12]

unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

The parties stipulated at trial that Gross filed his administrative claim on August 7, 1973.

**12.** The district court in referring to the 1968, 1970, and 1971 feed grain payments wrote:

In requiring Gross to refund the 1968, 1970–71 FGP payments the county committee relied on reports that were riddled with inconsistencies. They subsequently recom-

mended Gross for criminal prosecution. [*Gross v. United States*, 508 F.Supp. at 1092.]

We do not construe this statement as a finding that the ASCS Committee had then engaged in tortious conduct toward Gross. An independent investigation by the Office of the Inspector General of the United States Department of Agriculture had noted irregularities between Gross and his tenants in those years in question.

The ASCS Committee ordinarily would be entitled to rely on such a report for its further action unless it knew that the report and its conclusions were incorrect, nevertheless re-

## D. *Violations of Regulations.*

The Government also contends that Gross may not assert a claim for the Government's alleged violations of its own regulations in administering the feed grain program. It points out that Gross' complaint rests on the allegation that the ASCS violated its regulations governing the program's implementation. Because those regulations impose no duty on the Government, however, it argues that Gross has no Federal Tort Claims Act claim. To assert a valid cause of action under the Act for violation of the ASCS regulations, the Government argues that state law would have to recognize a private cause of action for violations of duties similar to those performed by the ASCS.[13]

The Government misinterprets Gross' complaint. While Gross did allege the violation of a variety of regulations, the crux of his complaint is that ASCS officials intentionally inflicted emotional distress. Gross did not allege that the officials' violation of the regulations constituted a tort. Moreover, the district court substantially removed Gross' allegation that the ASCS violated its regulations as a basis for this action when it granted the Government's motion for partial summary judgment.

As the district court noted, apart from whether the actions of the ASCS violate the applicable regulations, "if their actions constitute the intentional infliction of emotional distress under the standard set out by South Dakota law, Gross can prevail." *Gross v. United States, supra,* 508 F.Supp. at 1091. If Gross were contending that he was entitled to recover on the basis of the ASCS' violation of its regulation, the Government's argument would certainly have merit. Because that is not the basis for his action, the Government's argument must fail.

questing a refund and recommending Gross for criminal prosecution. This issue should be addressed by the district court in its consideration of the statute of limitations defense.

## E. *Discretionary Function Exception.*

The Government argues that the "discretionary function" exception to the Federal Tort Claims Act precludes Gross' claims in the present case. Section 2680(a), which contains the exception, excludes "[a]ny claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (1976). The Government implies that this court's decision in *Gross v. Sederstrom, supra,* determined that ASCS actions fall within the exception.

In *Gross v. Sederstrom,* Gross sued his farm tenant and two members of the county ASCS Committee in their individual capacities. The district court granted the defendant county ASCS Committee members' motion for summary judgment because it found that they were acting in the scope of their official capacities in taking the statements at issue in that case. This court affirmed the district court, rejecting Gross' contention that members of the ASCS Committee were *individually* liable for their part in taking statements from Gross' tenant, Sederstrom.

> [Gross'] contention that the [members of the county ASCS Committee] were acting in a ministerial capacity rather than a judicial or discretionary capacity clearly lacks substance. The regulations outlining the duties of the County A.S.C.[S.] Committees gives them the broad responsibility for carrying out various government farm programs. 7 C.F.R. § 7.20. The type of investigation undertaken in this case was essential to implementation of the Feed Grain Program. It is precisely the type of discretionary activity that the doctrine of governmental immunity was intended to protect. [*Gross v. Sederstrom, supra,* 429 F.2d at 99.]

13. The Federal Tort Claims Act holds the Government liable with respect to tort claims "in the same manner and to the same extent as a private individual under like circumstances[.]" 28 U.S.C. § 2674 (1976).

While members of the ASCS committees may be required to exercise some discretion in the performance of their official duties, the exercise of such discretion does not automatically fall within the discretionary function exception. The discretionary function exception covers only decisions made at the policy or planning level. *See Dalehite v. United States*, 346 U.S. 15, 42, 73 S.Ct. 956, 971, 97 L.Ed. 1427 (1953). Decisions made at the operational level may still be actionable even though they involve an element of discretion. *Bernitsky v. United States*, 620 F.2d 948, 951 (3d Cir.), *cert. denied*, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980).

█ In this case, as the district court noted, the ASCS excluded Gross from the feed grain program because he engaged in custom farming. Higher authority, however, consistently reversed these actions. *Gross v. United States, supra*, 508 F.Supp. at 1091. While it may be argued that the local ASCS officials made a policy judgment the first time they attempted to exclude custom farmers from the feed grain program, the consistent reversals by officials in Washington indicate that the local ASCS office was not implementing decisions made at the planning level of otherwise exercising policymaking authority. *See Dalehite v. United States, supra*, 346 U.S. at 35–36, 73 S.Ct. at 967–968.

In addition, other actions by ASCS officials clearly indicate that the action taken against Gross did not involve the kind of activity protected by the discretionary function exception.

For example, the state and county ASCS Committees refused to meet with Gross to discuss the denial of his application for the 1965 feed grain program even though directed to do so by the Deputy Administrator of State and County Operations (DAS-CO).[14] They were not vested with discretion to refuse.[15]

In September 1966, the ASCS sent Gross a notice of noncompliance for the 1966 feed grain program. The ASCS would ordinarily send these notices early enough so that participants could destroy the acreage that they had overplanted, thereby bringing themselves into compliance with the regulations. By September, however, Gross could no longer get back into compliance because he had already harvested the crop.[16]

In 1968, the county ASCS Committee asked to examine the leases on two parcels of land Gross leased from members of his family. While Gross worked other parcels, the ASCS initially expressed interest only in those directly adjacent to the Committee chairman's land. The chairman had unsuccessfully attempted to lease this land himself. When Gross objected that the lease terms were a private matter, the Committee extended its inquiry to the rest of Gross' land. The county ASCS Committee did not tell Gross that he could submit written statements from the owners attesting to the lease as an alternative to submitting the leases, even though the state Committee had explicitly advised the county Committee that written statements were acceptable. Once Gross learned of the alternative, he promptly submitted the needed written statements.

14. As we discussed above, Gross is not barred by the statute of limitations from using ASCS acts that occurred before 1971 as a basis for his cause of action as long as he can prove that one tortious act occurred within the limitations period.

15. It later became apparent that the ASCS based its denial in 1965 on statements from Gross' tenant, Sederstrom, that Sederstrom subsequently repudiated. According to this tenant, two members of the county ASCS Committee asked him to recopy in his own hand two statements they had written. When confronted with the statements by an OIG investigator, Sederstrom denied the truth of the asser-

tions, stating that he had not realized what the Committee members had asked him to write. These actions did not involve a policy decision, but rather a decision on how to support their action taken at an operational level.

16. When Gross inquired how he could remedy the situation, the ASCS office manager suggested that Gross should appeal to Washington—a reference to Gross' history of taking advantage of his appeal rights when he felt a decision was unfair. The office manager's comment leaves a strong impression that the notice was intentionally delayed to insure that Gross could not participate and would have no recourse in the appeals process.

In 1969, the ASCS again denied Gross participation because the county ASCS Committee claimed that Gross had violated the regulations by eliminating tenants in anticipation of participation in the feed grain program. The ASCS refused a specific request by Gross to see the evidence on which it had based its determination.[17] When Gross appealed to the state ASCS Committee the county Committee did not send along the evidence it used to support its determination despite Gross' specific request that they do so. In addition, the county Committee frustrated Gross' subsequent appeal to Washington by exacting a promise from one of Gross' tenants that he would not give a statement to Gross. This action prevented Gross from proving that he had not eliminated tenant farmers to enhance his own benefits from the feed grain program.

These actions by the ASCS involved neither the making of policy decisions nor the implementation of policy judgments made by others. Instead, those officials charged with insuring the operation of the program acted unreasonably in an attempt to prevent Gross from participating.

We have reviewed each case cited by the Government in support of its attempt to characterize the ASCS actions as within the discretionary function exception.[18] We are convinced that this case is different. In each case cited by the Government, no objective standard governed the exercise of discretion by the Government official. In this case, however, the actions of the ASCS are sufficiently capable of measurement by objective standard, and therefore involve no exercise of discretion covered by section 2680(a).[19]

### F. *Intentional Torts Exception.*

■ The Government finally argues that the "intentional torts" exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(h) (1979,[20] bars Gross' claim for intentional infliction of emotional distress. By limiting claims cognizable under the Act

---

**17.** Gross subsequently learned that the Committee based its decision on notes made by the ASCS office manager because the tenants refused to give statements. The ASCS did not ask Gross for his version.

**18.** *See Barton v. United States,* 609 F.2d 977 (10th Cir. 1979); *Thompson v. United States,* 592 F.2d 1104 (9th Cir. 1979); *Scanwell Laboratories, Inc. v. Thomas,* 521 F.2d 941 (D.C.Cir. 1975), *cert. denied,* 425 U.S. 910, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976); *Kiiskila v. United States,* 466 F.2d 626 (7th Cir. 1972); *Gowdy v. United States,* 412 F.2d 525 (6th Cir.), *cert. denied,* 396 U.S. 960, 90 S.Ct. 437, 24 L.Ed.2d 425 (1967); *Peltzman v. Smith,* 404 F.2d 335 (2d Cir. 1968); *Coastwise Packet Co. v. United States,* 398 F.2d 77 (1st Cir.), *cert. denied,* 393 U.S. 937, 89 S.Ct. 300, 21 L.Ed.2d 274 (1968); *Lawrence v. United States,* 381 F.2d 989 (9th Cir. 1967); *Eastport S.S. Corp. v. United States,* 372 F.2d 1002 (Ct.Cl.1967); *United States v. Morrell,* 331 F.2d 498 (10th Cir.), *cert. denied,* 379 U.S. 879, 85 S.Ct. 146, 13 L.Ed.2d 86 (1964); *Dupree v. United States,* 247 F.2d 819 (3d Cir. 1957); *Chournos v. United States,* 193 F.2d 321 (10th Cir. 1951), *cert. denied,* 343 U.S. 977, 72 S.Ct. 1074, 96 L.Ed. 1369 (1952); *Boruski v. Div. of Corp. Finance,* 321 F.Supp. 1273 (D.C.S.D.N.Y.1971).

These cases all involved a broader delegation of discretionary authority. In *Barton v. United States, supra,* for instance, the plaintiff brought an action against the Bureau of Land Management for damages he alleged were a result of their unlawful acts requiring the temporary discontinuance of grazing on public land. The regulation allowed discontinuance "for such period of time as necessary." 609 F.2d at 980. Because there was no standard by which to measure the propriety of the official's action, the Tenth Circuit held the action precluded by the discretionary function exception. *Id.*

**19.** Other circuits have analyzed this same problem using a policy balancing test. *See Caban v. United States,* 671 F.2d 1230, 1232–33 (2d Cir. Feb. 5, 1982); *Canadian Transport Co. v. United States,* 663 F.2d 1081, 1086–87 (D.C.Cir. 1980). Under this analysis, the discretionary function exception may be applied only to decisions in which the decisionmaker must look to considerations of public policy. *Caban v. United States, supra,* at 1233. While we do not specifically apply a policy balancing test in the present case, this approach supports our conclusion that the ASCS actions under consideration are not protected by the discretionary function exception.

**20.** Section 2680(h) provides that the FTCA does not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights * * *."

to those caused by negligent or wrongful conduct, see 28 U.S.C. § 1346(b) (1976), the Government maintains that the Act excludes torts involving the intentional infliction of emotional distress. Even if intentional infliction of emotional distress does not technically fall within the intentional torts exception, the Government urges us to disregard the label and determine the scope of the exception in this case by examining the underlying acts that gave rise to the complaint. Under this analysis, the Government argues that the ASCS actions, if tortious, involved interference with contract rights, misrepresentation, malicious prosecution, and abuse of process. When so examined, the Government maintains that the intentional torts exception clearly precludes Gross' complaint.

The Government cites *United States v. Hambleton*, 185 F.2d 564 (9th Cir. 1950), as the only authority supporting its view that the intentional torts exception precludes a suit for intentional infliction of emotional distress. The *Hambleton* court held that intentional infliction of emotional distress fell within the intentional torts exception because it was originally an extension of assault. *Id.* at 566. More recent cases, however, implicitly reject this analysis, suggesting that courts should not read exceptions into the Federal Tort Claims Act beyond those provided by Congress. *See Black v. Sheraton Corporation of America*, 564 F.2d 531, 539–40 (D.C. Cir. 1977); *Avery v. United States*, 434 F.Supp. 937, 945 (D.C.Conn.1977); *Crain v. Krehbiel*, 443 F.Supp. 202, 211 (D.C.N.D.Ca.1977).[21] Congress may, of course, amend section 2680(h) at any time, either by adding the tort of intentional infliction of emotional distress to its list or by indicating that the list is not

intended to be exhaustive. *See Rayonier, Inc. v. United States*, 352 U.S. 315, 320, 77 S.Ct. 374, 377, 1 L.Ed.2d 354 (1957).

 We also decline the Government's offer to recharacterize Gross' claim so that it falls within the exceptions of section 2680(h). While the Government's actions also may have involved interference with Gross' contract rights, misrepresentation, malicious prosecution, and abuse of process, the tortious wrong Gross asserts is their intentional infliction of emotional distress. The Government mistakes particular items of damage to Gross' well-being for the tortious wrongs alleged in his complaint. *See Black v. Sheraton Corporation of America, supra*, 564 F.2d at 540–41. Because the Federal Tort Claims Act does not give immunity for the type of activity in which the Government was here alleged to be involved, we hold that Gross' claim for damages is not barred by the intentional torts exception.[22]

### III. *Conclusion.*

We affirm the district court in all matters except its treatment of the statute of limitations issue. We therefore vacate the judgment and remand this case to the district court for further proceedings. The district court should make appropriate findings concerning whether the members of the Lake County ASCS Committee engaged in tortious conduct subsequent to August 7, 1971, causing Gross injury, and thereafter enter an appropriate judgment.

FLOYD R. GIBSON, Senior Circuit Judge, dissenting.

The actions and antics of the federal officials in this case should not be condoned.

---

**21.** In *Crain*, for instance, the court held the Government liable for intentionally inflicting emotional distress on a government informant when government agents threatened to reveal the informant's identity after promising him anonymity. 443 F.Supp. at 211–12.

**22.** Citing *Hanke v. Global Van Lines, Inc.*, 533 F.2d 396 (8th Cir. 1976), and the Restatement of Torts, the Government also contends that the tort of intentional infliction of emotional distress requires outrageous conduct instead of merely unreasonable conduct as the district

court held. *See Gross v. United States, supra*, 508 F.Supp. at 1091. In *Hanke*, this court addressed the issue as it applied to North Dakota law, both parties having assumed that North Dakota would follow the Restatement of Torts. *See Hanke v. Global Van Lines, Inc., supra*, 533 F.2d at 399. Under South Dakota law, however, the conduct need only be unreasonable. *See Chisum v. Behrens*, 283 N.W.2d 235, 240 (S.D.1979); *First Nat'l Bank of Jacksonville v. Bragdon*, 84 S.D. 89, 167 N.W.2d 381, 382 (1969).

They were egregious, and constituted not only a clear abuse of whatever discretionary powers the officials possessed but also constituted intentional and malicious torts. These officials should be personally liable for their unauthorized and illegal acts. The public purse, however, should not be called upon to finance the carrying on of personal vendettas. Thus, I believe that the "intentional torts" exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(h) (1976), bars Gross's recovery in this case, and therefore I dissent. I would simply reverse the district court rather than remand this action.

Section 2680(h) specifically excepts from the coverage of the FTCA assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. The majority errs in allowing the drafting of Gross's complaint to determine whether his action falls within the exceptions. I would look at the wrongful acts underlying the action, and in this case I conclude that the acts complained of are within the exceptions in § 2680(h).

Unless a court looks at the acts giving rise to a complaint, the applicability of the FTCA will depend on the ingenuity of counsel in drafting the complaint. Courts have held that the determination of whether an action is barred by § 2680(h) depends on the act or acts complained of, rather than the legal theory under which the action is brought. The Tenth Circuit has stated: "We must then look beyond the literal meaning of the language to ascertain the real cause of complaint." *Hall v. United States*, 274 F.2d 69, 71 (10th Cir. 1959), *quoted with approval in United States v. Neustadt*, 366 U.S. 696, 703, 711, 81 S.Ct. 1294, 1298, 1302, 6 L.Ed.2d 614 (1961). *See also Johnson v. United States*, 547 F.2d 688, 691–92 (D.C.Cir.1976); *Gaudet v. United States*, 517 F.2d 1034, 1035 (5th Cir. 1975); *Klein v. United States*, 268 F.2d 63, 64 (2d Cir. 1959).

These cases are consistent with *Black v. Sheraton Corp. of America*, 564 F.2d 531, 540–41 (D.C.Cir.1977), cited by the majority at p. 304, *ante*. The majority here and the *Black* court correctly point out that it is the wrongs complained of, rather than the damage that results, that is controlling for § 2680(h). However, the cases I have cited stand for the proposition that in analyzing those underlying wrongs, a court should look at the *nature* of the acts rather than the plaintiff's characterization.

In the instant case the nature of the acts complained of is such that the acts fall within the exceptions to § 2680(h). For purposes of argument we can assume that Gross made out a case of intentional infliction of emotional distress under South Dakota law as that law is outlined in *Chisum v. Behrens*, 283 N.W.2d 235 (S.D.1979), cited by the majority at n.22, *ante*. However, the South Dakota Supreme Court held in *Chisum* that a claim for intentional infliction of emotional distress "cannot be sustained where there has been no accompanying physical injury . . . unless there has been some conduct on the part of defendant constituting a direct invasion of the plaintiff's rights *such as* that constituting *slander, libel, malicious prosecution*, seduction, or other willful, wanton, or malicious misconduct." *Id.* at 240, *quoting State Farm Mutual Automobile Insurance Co. v. Village of Isle*, 265 Minn. 360, 367, 368, 122 N.W.2d 36, 41 (1963) (emphasis added).

Therefore, if Gross has succeeded in making out a complaint under South Dakota law, he must have shown a direct invasion of his rights such as that involved in the torts listed in § 2680(h). Such invasions in this case include interference with contract rights (because, Gross alleges, the Government failed to fulfill its obligation to pay him money), misrepresentation, libel, and slander (because, Gross alleges, the Government solicited false statements to make him appear ineligible for the feed grain program), and malicious prosecution or abuse of process (because, Gross alleges, his injury stems from misuse of the administrative appeals process). At the very least, South Dakota law requires Gross to show an invasion of rights closely analogous to those invasions of rights listed in § 2680(h), and therefore we should find that the South

Dakota version of intentional infliction of emotional distress is implicitly included in § 2680(h).

Accordingly, I dissent.