**Kenneth POOLMAN and Jeffrey Poolman, Appellants,**

v.

**Gerald NELSON, Appellee.**

**No. 85–5401.**

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1986.

Decided Sept. 30, 1986.

Alvin O. Boucher, of Grand Forks, N.D., for appellant.

Robert M. Small, Asst. U.S. Atty., of Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, and HEANEY and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Kenneth and Jeffrey Poolman appeal from a summary judgment entered against them on their fraudulent misrepresentation claim against Gerald Nelson regarding Jeffrey Poolman's application for a farm loan. The sole issue in this appeal is whether the district court [1] erred in holding that Nelson,

---

**1.** The Honorable Edward J. Devitt, United States District Judge for the District of Minnesota.

an employee of the United States Farmers Home Administration, is absolutely immune from liability because his alleged tortious actions were within the outer perimeter of his line of duty. The Poolmans contend that the law of this circuit affords immunity to a federal official from common law tort liability only if that official was both acting within the outer perimeter of his authority and engaging in the exercise of a discretionary function, and they further argue that the district court erred in granting summary judgment because Nelson failed both of these tests. We affirm the judgment of the district court.

When reviewing a grant of summary judgment, all facts must be viewed in the light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences to be drawn from the facts. *Mandel v. United States*, 719 F.2d 963 (8th Cir.1983). We so state the facts based on the record before the district court.

In April 1982, Jeffrey Poolman applied for a loan with the Farmers Home Administration of the United States Department of Agriculture (FmHA). He intended to use the loan to purchase farm property at an estate sale scheduled for September 8, 1982. When the loan application was filed, Jeffrey Poolman lived with his parents, Kenneth and Verona Poolman. Verona Poolman was employed as a County Officer Assistant in the Warren, Minnesota FmHA office, although she was on medical leave from March 1982 to June 1983.

Gerald Nelson was employed as a County Supervisor for FmHA. After the Poolman loan application was filed, Jeffrey and Kenneth Poolman frequently asked Nelson about the status of the application. Nelson repeatedly assured the Poolmans that the loan was in process and would be approved. During the weeks prior to the September 8 estate sale, Nelson told the Poolmans on several occasions that the loan application had been sent to the state FmHA office, that it would be approved within six weeks, and that Jeffrey Poolman could and should bid on the estate sale farm property.

These statements were repeated on September 8.

Relying on Nelson's assurances, Jeffrey Poolman acquired farm property at the September 8 sale with a bid of $156,500, the amount Nelson stated would be covered by the FmHA loan. To meet the required ten percent down payment, Kenneth Poolman obtained $15,650 from a local bank in exchange for a demand note. Nelson promised the bank employee who processed the bank loan that the FmHA loan would be immediately forthcoming. Without Nelson's repeated assurances, Jeffrey Poolman would not have bid on the property at the estate sale and Kenneth Poolman would not have obtained the $15,650 bank loan.

Jeffrey Poolman made the $15,650 down payment. He then signed a contract to purchase the farm property, with payment of the $140,850 balance due by October 23, 1982. The contract provided that failure to make this payment would result in forfeiture of the down payment.

In late October 1982, Nelson informed the Poolmans that the loan application had to be processed in the Hallock, Minnesota FmHA office. Yet on December 6, 1982, Kenneth Poolman learned that Nelson had not sent the loan application to the Hallock office.

Jeffrey Poolman's loan was denied by telephone on December 27, 1982. A letter from the FmHA State Director, dated January 21, 1983, confirmed this denial. Among other things, the letter stated that, since the date of application, Jeffrey Poolman was ineligible for the loan because FmHA Instruction 2045–BB prohibits loans to a family member of an FmHA employee. Jeffrey Poolman's mother, Verona, was employed by FmHA in April 1982.

Jeffrey Poolman was unable to obtain alternative financing, and on January 18, 1983, the down payment was forfeited. This lawsuit was then brought in a Minnesota state court and removed to the United States district court. The Poolmans alleged that Nelson's repeated assurances concerning the status of the Poolman loan

application created a cause of action for fraudulent misrepresentation. Upon Nelson's motion, the district court entered summary judgment for Nelson, concluding that Nelson, a federal official, is immune from common law tort liability because the alleged tortious action was within the outer perimeter of Nelson's line of duty. *Poolman v. Nelson*, Civ. 6–85–1360, slip op. at 1 (D.Minn. Oct. 15, 1985).

In reviewing a district court decision granting a motion for summary judgment, we apply the same standard as the district court. *Mandel v. United States*, 719 F.2d at 965. Summary judgment should be granted only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Summary judgment is an extreme remedy and is not to be granted unless the moving party has established his right to a judgment with such clarity as to leave no room for controversy, and the other party is not entitled to recover under any discernible circumstances. *Id.; see also Portis v. Folk Construction Co.*, 694 F.2d 520, 522 (8th Cir.1982).

The Poolmans first contend that the district court erred in granting summary judgment based solely on a finding that Nelson's alleged tortious activity was within the outer perimeter of his line of duty. They argue that in order for a federal official to be immune from common law tort liability, the law of this circuit requires both that the official's actions were within the outer perimeter of his line of duty and that the official was engaged in the exercise of a discretionary function.

■ Federal officials enjoy immunity from common law tort liability for actions taken within the outer perimeter of their line of duty. *See, e.g., Bushman v. Seiler*, 755 F.2d 653, 655–56 (8th Cir.1985); *Johnson v. Busby*, 704 F.2d 419, 420 (8th Cir. 1983) (per curiam). Our prior holdings concerning the immunity of federal officials from common law tort liability stem from *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). There the Supreme Court found the Acting Director of the Office of Rent Stabilization absolutely immune from claims of defamation brought by his subordinates based upon a press release issued by the Director expressing his intention to suspend the subordinates. In defining the scope of immunity, the Court stated: "The fact that the action here taken was within the outer perimeter of petitioner's line of duty is enough to render the privilege applicable * * *." *Id.* at 575, 79 S.Ct. at 1341.

Affording immunity from common law tort liability to federal officials acting within the outer perimeter of their duties fosters the concerns expressed by the Court in *Barr*:

> It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.

*Id.* at 571, 79 S.Ct. at 1339.

Accordingly, this court has found federal officials acting within the outer perimeter of their line of duty immune from common law tort liability without expressly distinguishing discretionary and ministerial activity. *See, e.g., Bushman v. Seiler*, 755 F.2d at 655–56; *Johnson v. Busby*, 704 F.2d at 420. Likewise, this court has found federal officials subject to personal liability for tortious activity because their activity was not within the outer perimeter of their line of duty without expressly drawing the line between discretionary and ministerial activity. *See, e.g., Bishop v. Tice*, 622 F.2d 349, 359–60 (8th Cir.1980).

■ This is not to say that the discretionary or ministerial nature of an activity is never relevant in determining whether an official's acts are within the outer perimeter of his scope of authority. Undoubtedly, this outer perimeter fluctuates in relation to the degree of discretionary

authority afforded an official. In some situations it is necessary to determine the degree of discretion afforded a government official in order to ascertain whether the official acted within the outer perimeter of his line of duty. *See, e.g., Youngstrom v. Dunn,* 447 F.2d 948, 950 (8th Cir.1971); *Gross v. Sederstrom,* 429 F.2d 96, 99–100 (8th Cir.1970). But to require the often amorphous distinction between discretionary and ministerial acts as a prerequisite to determining whether immunity exists only shifts the focus from the central question of whether the complained of acts were sufficiently within the officer's scope of authority such that he should enjoy immunity in order to assure "the fearless, vigorous, and effective administration of policies of government." *Barr v. Matteo,* 360 U.S. at 571, 79 S.Ct. at 1339.

■■■ We recognize that some circuits have adopted the discretionary function requirement as an element in determining whether a federal official is immune from a common law tort cause of action.[2] The conflict between the desire for "the protection of the individual citizen against pecuniary damage caused by oppressive or malicious action on the part of officials of the Federal Government," on the one hand, and the need for "the protection of the public interest by shielding responsible governmental officers against the harassment and inevitable hazards of vindictive or ill-founded damage suits brought on account of action taken in the exercise of their official

responsibilities," on the other hand, is not easily resolved. *Id.* at 565, 79 S.Ct. at 1336. Yet, we feel *Barr* indicates that by allowing the degree of discretion embodied in a particular function to remain a factor—as opposed to requiring bright-line distinctions between discretionary and ministerial acts—courts can better resolve this conflict. Thus, we hold under *Barr* and this court's recent decisions that the district court did not err in concluding that Nelson is immune from common law tort liability based on its finding that his actions were within the outer perimeter of his line of duty.[3]

The Poolmans further argue that the district court erred in concluding there was no genuine issue of material fact as to whether Nelson's repeated assurances to the Poolmans concerning the status of the Poolman loan was an activity within the outer perimeter of Nelson's line of duty. More specifically, the Poolmans contend that Nelson exceeded this scope of authority by assuring that the loan would be granted when, in fact, it had no chance of success because Jeffrey Poolman's mother was an FmHA employee.

■■■ The district court applied the test enunciated in *Gross v. Sederstrom,* 429 F.2d at 96, to determine whether an official has acted within the outer perimeter of his line of duty: "[T]he act must have more or less connection with the general matters committed by law to the officer's control or

---

**2.** *See, e.g., Dretar v. Smith,* 752 F.2d 1015, 1017 n. 2 (5th Cir.1985); *Araujo v. Welch,* 742 F.2d 802, 804 (3d Cir.1984); *Strothman v. Gefreh,* 739 F.2d 515, 518 (10th Cir.1984); *Huntington Towers, Ltd. v. Franklin National Bank,* 559 F.2d 863, 870 (2d Cir.1977), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978); *Green v. James,* 473 F.2d 660, 661 (9th Cir.1973); *cf. Queen v. Tennessee Valley Authority,* 689 F.2d 80, 83 (6th Cir.1982) (implying the requirement), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1770, 76 L.Ed.2d 344 (1983); *George v. Kay,* 632 F.2d 1103, 1105 (4th Cir.1980) (implying the requirement) *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981). *But see Ricci v. Key Bancshares of Maine, Inc.,* 768 F.2d 456, 463–64 (1st Cir.1985); *Lojuk v. Johnson,* 770 F.2d 619, 626 n. 4 (7th Cir.1985), *cert. denied,*

—— U.S. ——, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986).

**3.** While this case involves only an alleged common law tort and not a violation of the Poolmans' constitutional or statutory rights, the Poolmans contend that we must apply the tests used in these latter situations. *See Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 3021 n. 14, 82 L.Ed.2d 139 (1984) (noting the "ministerial duty" exception to qualified immunity). Yet, in refusing to extend *Barr,* the Supreme Court made the crucial distinction between situations where an official has "committed a wrong under local law" and instances where an official has "also violated those fundamental principles of fairness embodied in the Constitution." *Butz v. Economou,* 438 U.S. 478, 495, 98 S.Ct. 2894, 2905, 57 L.Ed.2d 895 (1978).

supervision, and not be manifestly or palpably beyond his authority." *Id.* at 100 (quoting *Norton v. McShane,* 332 F.2d 855 (5th Cir.1964), *cert. denied,* 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965)).

An assessment of Nelson's functions and duties is the "starting point" in determining whether he acted within the outer perimeter of his authority. *Doe v. McMillan,* 412 U.S. 306, 320, 93 S.Ct. 2018, 2029, 36 L.Ed.2d 912 (1973). The record includes a detailed job description of Nelson's position as County Supervisor for FmHA. The Introduction to this job description indicates the wide ranging authority a County Supervisor has over FmHA matters in the county or counties he supervises.[4] This Introduction is followed by an extensive enumeration of a County Supervisor's principal duties and responsibilities. Des.App. at 16–18. These duties and responsibilities dictate the need for a County Supervisor to constantly interact with private individuals to further the services FmHA provides to the individuals and entities in the Supervisor's geographic area. We cannot conclude that Nelson exceeded the bounds of his control and supervision by, at his discretion, engaging in communications with the Poolmans concerning the status of Jeffrey Poolman's loan application. The Poolmans contend, however, that we must examine the specific nature of these communications. They argue that even if the subject matter of the communications fell within the scope of Nelson's duties, the tortious nature of the statements abrogates immunity. As we indicated in *Bushman,* 755 F.2d at 653, such a finding would debilitate the immunity defense:

> [T]o separate the activity that constitutes the wrong from its surrounding context—an otherwise proper exercise of au-

thority—would effectively emasculate the immunity defense. Once the wrongful acts are excluded from an exercise of authority, only innocuous activity remains to which immunity would be available. Thus, the defense would apply only to conduct for which it is not needed.

*Id.* at 656 (quoting *Wallen v. Domm,* 700 F.2d 124, 126 (4th Cir.1983)).

There are situations, of course, when the substance of an official's statements would lead to the conclusion that the act was not within the outer perimeter of the official's line of duty. But the failure to immunize actions, like Nelson's, that are closely tied to the official's duties and responsibilities would thwart the purpose of the governmental immunity doctrine—to allow government officials to vigorously and efficiently exercise their authority without fear of personal liability. *See, e.g., Doe v. McMillan,* 412 U.S. at 306, 93 S.Ct. at 2018; *Barr v. Matteo,* 360 U.S. at 564, 79 S.Ct. at 1335; *Spalding v. Vilas,* 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896); *Gross v. Sederstrom,* 429 F.2d at 99.

Therefore, we affirm the judgment of the district court.

HEANEY, Circuit Judge, concurring.

The result reached is a very harsh one. The Poolmans lose their life's savings, the seller gets a windfall and the errant federal employee goes free. Unfortunately, the decisions of the Supreme Court appear to require that the district court be affirmed. I thus have no alternative but to concur.

---

4. The Introduction states:

> The incumbent as a principal agency representative, office head and rural assistance and development specialist in a geographical area consisting of one or more counties is responsible for technical and administrative supervision of a diversified agricultural and rural housing loan, grant, and guaranteed program. Makes, supervises and services loans to both individuals and groups involving difficult, varied or large county unit has a relatively heavy volume of activity in a significant and diverse number of specialized programs requiring fulltime and sometime also temporary subordinate professional and support assistance. A broad range of knowledges, skills, and abilities including professional Agriculture, and business, financial, realty and administrative management are required.

Des.App. at 16.