1998 SD 1

**The FIRST NATIONAL BANK IN SIOUX FALLS, Plaintiff and Appellee,**

v.

**Calvin DRIER and Jan Drier, Defendants and Appellants.**

**Nos. 19430, 19460.**

Supreme Court of South Dakota.

Argued Oct. 23, 1997.

Decided Jan. 7, 1998.

Steven W. Sanford of Cadwell, Sanford, Deibert & Garry, Sioux Falls, for plaintiff and appellee.

Roger Hunt, Brandon, for defendants and appellants.

MILLER, Chief Justice.

[¶ 1.]  First National Bank in Sioux Falls (Bank) brought a foreclosure action against Cal and Jan Drier (hereinafter "Driers," or "Cal" or "Jan" when referred to individually) for defaulting on a loan.  Driers counter-claimed for negligent infliction of emotional distress and breach of the implied covenant of good faith and fair dealing.  The trial court granted a directed verdict in favor of Bank on the negligent infliction of emotional distress issue, and the jury awarded a verdict for Bank on its claim.  The court also assessed environmental clean-up costs against Driers for dumping waste into the septic system of their property.  Driers appeal on three grounds and Bank, through notice of review, appeals on one ground.  We affirm.

## FACTS

[¶ 2.]  Driers operated Rural Press, a printing business in Tea, South Dakota, since the 1960s.  Their business was successful until 1987 or 1988, when they lost several of their biggest customers.  It was about this time that Cal started suffering from major depression.

[¶ 3.]  Driers were long-time commercial loan customers of Bank and primarily dealt with Orrin Anderson, the manager of one of its branches.  Over the course of many years, until 1988, Driers had obtained several business loans.[1]  In April of 1989, Driers obtained an SBA loan to consolidate most of their debt into one loan.  They missed four payments on the consolidation loan and, by the end of summer 1990, were in default.

[¶ 4.]  SBA demanded that Bank either liquidate or assign the loan to SBA for that purpose.  As an alternative to foreclosure, Driers entered into a business deal with Lawrence & Schiller, a Sioux Falls advertising firm.  A new business, L & S Express, was formed in which Driers maintained a 49% interest.  Cal was given a salary from the new business and Driers were allowed to lease the assets from Rural Press to the new

---

1.  Some of these loans were guaranteed by the Small Business Association (SBA).

business. The lease payments were to be applied to SBA debt.[2] L & S Express made all its monthly lease payments for two years, but did not renew its lease at the end of those two years.[3]

[¶5.] Driers then sought new financing to restart their business, but SBA rejected Bank's suggestions for new financing. Driers then went through a self-liquidation process for a year. It did not work out well. SBA finally forced Bank to bring a foreclosure action against Driers.

[¶6.] After the foreclosure action was commenced, Driers were allowed to list their property for sale by themselves. Bank found a buyer for the property. At some point, Driers, without notifying Bank or the buyer, dumped ink and other waste products into the septic system of the property. Bank incurred costs of $8,800 in having the septic system tested and cleaned.

[¶7.] In the foreclosure action, Driers counterclaimed for negligent infliction of emotional distress by Bank on Cal and for breach of the implied covenant of good faith and fair dealing. The trial court granted Bank a directed verdict as to the negligent infliction of emotional distress claim and refused to provide the jury with Driers' proposed instruction on that issue. The court also refused to give Driers' proposed jury instruction regarding SBA standard operating procedures. The case was submitted to the jury, which found in favor of Bank. The trial court charged the costs Bank incurred in cleaning out the septic system against Driers and also awarded 17% of the total attorney fees requested by Bank. Driers appeal the following issues:

1. Did the trial court err in not providing the jury Driers' proposed instruction on negligent infliction of emotional distress?

2. Did the trial court err in not giving Driers' proposed jury instruction on Small Business Administration standard operating procedures?

3. Did the trial court err in awarding environmental clean-up costs against Driers when the property was sold "as is"?

Bank appeals on the following ground:

1. Did the trial court err in awarding Bank only 17% of its requested attorney fees?

## DECISION

[¶8.] **I. Whether the trial court erred in not providing Driers' proposed jury instruction regarding negligent infliction of emotional distress.**

[¶9.] Driers argue it was prejudicial error for the trial court not to give their jury instruction on negligent infliction of emotional distress.[4] We disagree.

[¶10.] Our standard of review for a trial court's refusal to give a proposed jury instruction is well settled. The burden is on the appellant to show prejudicial error and that, under the evidence presented, the jury might and probably would have returned a different verdict if the proposed instruction had been given. *Knudson v. Hess*, 1996 SD

---

2. The lease payments were insufficient to pay both SBA and non-SBA debt to Bank, so Bank lowered its interest rate and restructured other payments. SBA originally approved this setup.

3. At the end of the two years, Driers and L & S Express disagreed as to what property should be returned to Driers. After litigation, the disputed property was returned to Driers and L & S Express paid a large settlement to Driers, which was in portion applied to SBA debt.

4. Driers also stated that the trial court should not have granted a directed verdict on the issue of negligent infliction of emotional distress. They chose to make their argument only on the jury instruction issue because of the similarities of the two standards of review. As will be shown,

Driers' proposed instruction was inconsistent with South Dakota law and there was no evidence to support the proposed instruction. Likewise, there was no evidence that would have supported a verdict in their favor and thus the granting of a directed verdict on this issue was proper. Under our standard of review for a directed verdict, the trial court is to view the evidence in the light most favorable to the non-moving party and determine if there is substantial evidence to sustain the action. *Schuldies v. Millar*, 1996 SD 120, ¶8, 555 N.W.2d 90, 94. The trial court's decision is presumed to be correct. *Id.* We hold the trial court was correct in granting a directed verdict on this issue, as South Dakota does not allow a recovery for negligent infliction of emotional distress absent the manifestation of physical symptoms.

137, ¶ 6, 556 N.W.2d 73, 75; *Bauman v. Auch,* 539 N.W.2d 320, 323 (S.D.1995). Usually, failure to give an instruction that correctly states the law is prejudicial error. *Bauman,* 539 N.W.2d at 323. It stands to reason that there can be no prejudicial error in refusing a proposed jury instruction which does not correctly state the law.

[¶ 11.] Driers' proposed instruction on negligent infliction of emotional distress reads:

> The Defendants seek to recover for damages based upon a claim of negligent infliction of emotional distress. The elements of such a claim are:
>
> 1. The Plaintiff Bank engaged in negligent conduct directed toward the Defendant Cal Drier.
> 2. Cal Drier suffered serious emotional distress which was manifested by physical injury.
> 3. The Bank's negligent conduct was a proximate cause of the serious emotional distress suffered by Cal Drier.
> 4. "Physical injury" is defined as bodily injury or *a diagnosed severe mental illness or injury.* (Emphasis added.)

[¶ 12.] Driers' proposed jury instruction is not consistent with South Dakota law. We have held quite clearly that: "In South Dakota, the tort of negligent infliction of emotional distress requires manifestation of physical symptoms." *Nelson v. WEB Water Dev. Ass'n, Inc.,* 507 N.W.2d 691, 699 (S.D.1993) (citing *Wright v. Coca Cola Bottling Co.,* 414 N.W.2d 608, 609 (S.D.1987)). This is also the position taken recently by the United States Supreme Court in *Metro–North Commuter R.R. Co. v. Buckley,* 521 U.S. ——, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997). While *Metro–North* was decided under the Federal Employers' Liability Act, the Court did rely on an analysis of common-law cases. In *Metro–North,* the Court held that a worker exposed to asbestos could not recover for negligent infliction of emotional distress without undergoing any physical impact or contracting any asbestos related disease. *Id.,* 521 U.S. at ——, 117 S.Ct. at 2120, 138 L.Ed.2d at 572. While this decision by the United States Supreme Court is not binding on us, it reinforces our position

that a person cannot recover for negligent infliction of emotional distress absent a manifestation of physical symptoms.

[¶ 13.] Driers' proposed instruction is not consistent with South Dakota law because it expands the definition of "physical injury" to include "diagnosed severe mental illness." We hold the trial court was correct in declining to give the jury Driers' proposed instruction on this issue.

[¶ 14.] **II.   Whether the trial court erred in not giving Driers' proposed jury instruction concerning SBA standard operating procedures.**

[¶ 15.] Driers claim that it was prejudicial error for the trial court to not provide the jury with their proposed instruction on SBA standard operating procedures. We disagree.

[¶ 16.] As mentioned above, the burden is on Driers to show that the trial court's failure to give their proposed instruction was prejudicial error and that, had their proposed instruction been given, the jury might and probably would have returned a different verdict. *See Knudson,* 1996 SD 137 at ¶ 6, 556 N.W.2d at 75.

[¶ 17.] Driers' proposed instruction concerning SBA standard operating procedures pertained to its counterclaim against Bank for breach of the implied covenant of good faith and fair dealing. Driers claim that Bank's alleged failure to comply with SBA standard operating procedures violated this implied covenant. Driers' proposed instruction reads:

> Small Business Administration Standard Operating Procedure Manuals (specifically S.O.P. 50–50–3) provide:
>
> *Specific Limitations.* SBA's prior written consent is required as a prerequisite to the accomplishment of any of the following actions:
>
> (1) "Substantial" alteration in any terms of any Loan Instrument.
>
> (2) *Releases of collateral* having a cumulative value *of more* than *20% of the original loan amount.*

(9) Take or consent to any action that benefits or confers a preference on the financial institution.

If you find the Bank failed to comply with this standard operating procedure, then such failure constitutes bad faith and is a breach of the covenant of good faith and fair dealing. (Emphasis in original.)

[¶ 18.] The trial court rejected this proposed instruction as well as one proposed by Bank in favor of its own instruction. The jury instruction provided by the trial court states, in relevant part:

However, information, recommendations or requirements of the contract between the bank and SBA may be considered by you as to the allegation of defendants on the issue of whether there was a breach in the contract between the plaintiff and defendants of the covenant of good faith and fair dealing or any negligent misrepresentation as alleged by defendants.

This instruction clearly states that the contract between Bank and SBA was to be considered in determining the "bad faith" issue. There was evidence introduced at trial that specifically laid out these standard operating procedures of the SBA and Driers were allowed to argue this to the jury. The instruction provided by the trial court adequately instructed the jury as to the proper law to consider. We conclude that Driers have failed to meet their burden. The jury was given the opportunity to decide Driers' claim with the instruction given and failed to return a verdict in their favor.[5]

[¶ 19.] **III. Whether the trial court erred in awarding Bank only 17% of its requested attorney fees.**

[¶ 20.] Bank filed a notice of review on the issue of whether the trial court erred in only awarding Bank 17% of its attorney fees. Bank did not address this issue in its brief. We have often stated that "[f]ailure to cite supporting authority in an appellate brief violates SDCL 15–26A–60(6) and waives the issue before this Court." *In re Application of Widdison*, 539 N.W.2d 671, 675 (S.D.1995) (citing *Kostel Funeral Home v. Duke Tufty Co.*, 393 N.W.2d 449, 452 (S.D.1986)).[6]

[¶ 21.] Affirmed.

[¶ 22.] SABERS, AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

---

5. Bank also argues that the proposed instruction of Driers on this issue is inconsistent with South Dakota law. We agree with Bank, as Driers' proposed instruction states that violation of SBA standard operating procedures is "bad faith per se." This is not the law and the instruction provided by the trial court accurately stated the law on this issue. We have held that "bad faith" is to be determined by the jury. *Kunkel v. United Sec. Ins. Co.*, 84 S.D. 116, 122, 168 N.W.2d 723, 726 (1969). Driers' proposed instruction would incorrectly tie the hands of the jury in making a "bad faith" determination.

6. Driers have also appealed the issue of whether it was error for the trial court to award environmental clean-up costs to Bank, when Driers had sold the property "as is." Driers never argued against these costs or objected to the awarding of them at the trial court level. This Court will not address issues not raised to the trial court, and they are deemed waived. *Gesinger v. Gesinger*, 531 N.W.2d 17, 22 (S.D.1995) (citing *Fullmer v. State Farm Ins. Co.*, 514 N.W.2d 861, 866 (S.D. 1994); *Hepper v. Triple U Enter., Inc.*, 388 N.W.2d 525, 527 n. 3 (S.D.1986)).