2002 D.S.D. 22

**Audrey LOCKE, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. CIV. 00–1014.**

United States District Court, D. South Dakota, Northern Division.

July 29, 2002.

Brent Evan Newton, Asst. Fed. Pub. Defender, Houston, TX, Roland E. Dahlin, II, Fed. Public Defender, Brownsville, TX, for Darrell Eugene Alexander.

Darrell Eugene Alexander, Beaumont, TX, pro se.

S. Michael Bozarth, Office of Atty. Gen., Austin, TX, for Gary Johnson.

## ORDER ON MOTION TO DISMISS

KORNMANN, District Judge.

### BACKGROUND

[¶ 1.] Plaintiff brought this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq. Jurisdiction is alleged to exist pursuant to 28 U.S.C. § 1346. Plaintiff alleges in her amended complaint that Darrell DeCoteau ("DeCoteau"), then a Sisseton–Wahpeton Sioux tribal police officer, while acting within the scope of his employment, wrongfully assaulted plaintiff, then a tribal police dispatcher, by twice placing an air pistol to the back of her head and pulling the trigger. Plaintiff twice felt the puff of air on her neck. It is undisputed that the pistol

was not capable of causing any physical injury. She would have known that after the first puff. Plaintiff also alleges claims of negligent and intentional infliction of emotional distress, negligent hiring and supervision, and negligently providing an unsafe workplace.

[¶ 2.] Defendant has admitted that the Sisseton–Wahpeton Sioux Tribe ("Tribe") operates the Sisseton–Wahpeton Sioux Tribe police department under an Indian Self–Determination Act contract with the Bureau of Indian Affairs ("B.I.A."), that DeCoteau was employed as a police officer, and that plaintiff was employed as a dispatcher at all times relevant. Defendant admitted the facts upon which plaintiff's assault claim is based[1] but denies that DeCoteau was a federal officer or was acting within the scope of his law enforcement duties within the meaning of 28 U.S.C. § 2680 at the time of the alleged assaults.

[¶ 3.] Defendant filed a motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), and for failure to state certain claims upon which relief can be granted, pursuant to Fed. R.Civ.P. 12(b)(6). When considering a motion to dismiss, the district court must construe the complaint liberally and assume all factual allegations to be true. *Whisman v. Rinehart,* 119 F.3d 1303, 1308 (8th Cir.1997). Dismissal under Fed. R.Civ.P. 12(b)(6) is appropriate only when it appears beyond doubt that the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. *Dover Elevator Co. v. Arkansas State Univ.,* 64 F.3d 442, 445 (8th Cir.1995).

**DECISION**

## I. JURISDICTION

[¶ 4.] "Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and statutes enacted by Congress pursuant thereto." *Marine Equipment Management Co. v. U.S.,* 4 F.3d 643, 646 (8th Cir.1993) (citing *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501, *reh'g denied* 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986), (citing in turn *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803))). "The threshold inquiry in every federal case is whether the court has jurisdiction" and the Eighth Circuit has "admonished district judges to be attentive to a satisfaction of jurisdictional requirements in all cases." *Rock Island Millwork Co. v. Hedges–Gough Lumber Co.,* 337 F.2d 24, 26–27 (8th Cir.1964), and *Sanders v. Clemco Industries* 823 F.2d 214, 216 (8th Cir.1987).

[¶ 5.] A motion to dismiss for lack of subject matter jurisdiction challenges the court's power to hear the case. *Mortensen v. First Fed. Savings and Loan Association,* 549 F.2d 884, 891 (3rd Cir. 1977). Jurisdictional issues are for the court to decide and the court has broad power to decide its own right to hear a case. *Osborn v. United States,* 918 F.2d 724, 729 (8th Cir.1990) (quoting *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981)). Because jurisdiction is a threshold question, judicial economy demands that the issue be decided at the onset. *Osborn,* 918 F.2d at 729.

[¶ 6.] "In order to properly dismiss for lack of subject matter jurisdiction

---

1. The parties dispute non-material facts concerning the incident. Defendant admits that DeCoteau placed an air pistol at the back of plaintiff's head and pulled the trigger. Defendant characterizes the events as workplace horseplay in the break room rather than assaults.

under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993). Defendant presents at least one factual challenge to this court's jurisdiction. "The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Drevlow v. Lutheran Church, Mo. Synod*, 991 F.2d 468, 470 (8th Cir.1993). *See also Osborn v. United States*, 918 F.2d at 729, n. 4 (citing *Land v. Dollar*, 330 U.S. 731, 735 & n. 4, 67 S.Ct. 1009, 1011 & n. 4, 91 L.Ed. 1209 (1947) and *Satz v. ITT Fin. Corp.*, 619, F.2d 738, 742 (8th Cir.1980)).

[¶ 7.] The Eighth Circuit, in *Osborn v. United States*, delineated the standard of review for motions to dismiss under Fed. R.Civ.P. 12(b)(1):

> [H]ere the trial court may proceed as it never could under 12(b)(6) or Fed. R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Osborn v. United States*, 918 F.2d at 730 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n.*, 549 F.2d at 891). However, courts have also recognized that the jurisdictional issue and substantive issues can be so intertwined that a full trial on the merits may be necessary to resolve the issue. *Id.* (quoting *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir.1986)). *See also Whalen v. United States*, 29 F.Supp.2d 1093, 1095–96 (D.S.D.1998). The parties have submitted affidavits and depositions in support of and in resistance to the motion to dismiss and the court will consider such evidence as it relates to the jurisdictional challenge.

## A. Intentional Tort Exception to Federal Tort Claim Act Liability.

[¶ 8.] Defendant's first jurisdictional challenge is based upon the contention that DeCoteau was not a federal law enforcement officer at the time of the alleged assaults. The law enforcement functions of the Tribe are funded pursuant to a contract with the B.I.A. (known as a 638 contract because it is authorized by Pub.L. 93–638) under the Indian Self–Determination Education Assistance Act ("Self–Determination Act") as authorized by 25 U.S.C. § 450f. A November 5, 1990, amendment to that Act provides:

> With respect to claims resulting from the performance of functions ... under a contract, grant agreement, or cooperative agreement authorized by the Indian Self–Determination and Education Assistance Act ... an Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior ... while carrying out any such contract or agreement and its employees are deemed employees of the Bureau ... while acting within the scope of their employment in carrying out the contract or agreement: Provided, That after September 30, 1990, any civil action or proceeding involving such claims brought hereafter against any tribe, tribal organization, Indian contractor or tribal employee covered by this provision shall be deemed to be an action against the United States and will be defended by the Attorney General and

be afforded the full protection and coverage of the Federal Tort Claims Act . . .

Pub.L. No. 101–512, Title III, § 314, 104 Stat.1915, 1959 (codified at 25 U.S.C. § 450f notes).

[¶ 9.] The admissions of the defendant in its answer have been set forth. Essentially, the defendant admits that DeCoteau was a "federal employee" and therefore his actions, under certain circumstances, may subject the United States to FTCA liability. Defendant asserts, however, that DeCoteau is not a "federal officer" and therefore FTCA liability does not attach for his intentional torts.

[¶ 10.] The FTCA excepts from tort claim liability

Any claim arising out of assault, battery . . .

*Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery . . . For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680(h). Defendant contends that DeCoteau was never issued a federal law enforcement Deputy Special Officer ("DSO") commission by the B.I.A. and, even if he had such a commission, he was not, at the time of the alleged assaults, authorized to execute a search, seize evidence, make an arrest for violations of federal law, or otherwise act under color of federal law.

[¶ 11.] "The proviso to 28 U.S.C. § 2680(h) waives the defense of sovereign immunity for suits brought against the United States for certain intentional torts committed by its law enforcement officers acting within the scope of their employment. *Solomon v. United States,* 559 F.2d 309 (5th Cir.1977). Waivers of sovereign immunity are to be strictly construed." *Bates v. United States,* 517 F.Supp. 1350, 1356 (W.D.Mo.1981), *aff'd,* 701 F.2d 737 (8th Cir.1983).

[¶ 12.] Plaintiff has failed to cite to any specific provision of law or set forth any non-conclusory facts in connection with her claim that DeCoteau was a federal law enforcement officer at the time of the alleged assaults. *See Dry v. United States,* 235 F.3d 1249, 1257 (10th Cir.2000). The affidavit of DeCoteau is unchallenged to the effect that he has not received the necessary certification, enforces only tribal laws or ordinances, and is not a federal law enforcement officer. Plaintiff refers to the 638 contract which obligates the Tribe to "[p]rovide enforcement of all Federal, State, Tribal and local Government laws . . . in accordance with the Contractor's area of jurisdiction . . ." This language does not, in and of itself, transform DeCoteau into a federal law enforcement officer any more than it would transform him into a state law enforcement officer. DeCoteau and plaintiff worked for the same employer, the Tribal police department. Plaintiff asserts that "in practice," tribal police officers would sometimes make arrests for violations of federal law and would accompany B.I.A. investigators in making arrests for violations of federal law or in executing search warrants. These allegations, assumed to be true in general and as to DeCoteau, do not sufficiently allege that DeCoteau is a federal law enforcement officer. It is common knowledge that local police officers and county sheriffs or deputies assist tribal officers and federal officers as well on occasion and vice versa. Such assistance does not cause these other

law enforcement officials to be federal law enforcement officers. Plaintiff has not put forth any facts which would suggest, much less show, that DeCoteau was anything other than a Tribal police officer. She has failed to meet her burden of proof as to this issue of jurisdiction. DeCoteau is thus not excepted from the so-called intentional torts exception to the FTCA, 28 U.S.C. § 2680(h). He is not an officer of the United States. Therefore, the federal government is not liable as a matter of law for certain intentional torts by DeCoteau, including assault.

[¶ 13.] Plaintiff contends that the court need not reach the issue of DeCoteau's status under 28 U.S.C. § 2680(h) because her claims for negligent as well as for intentional infliction of emotional distress do not come under the § 2680(h) exception. Plaintiff's assertion is that DeCoteau's actions may not rise to the level of a criminal assault as defined by SDCL 22–18–1 (simple assault) or SDCL 22–18–1.1 (aggravated assault) but they may nonetheless be found to have been made with the intent to harass her or cause her distress. An assault need not be a criminal act; it may simply constitute a tort. Black's Law Dictionary, Seventh Addition, tells us that an assault, for purposes of both criminal and tort law, is the "threat or use of force on another that causes that person to have a reasonable apprehension of imminent harmful or offensive contact; the act of putting another person in reasonable fear or apprehension of an immediate battery by means of an act amounting to an attempt or threat to commit a battery." Plaintiff's accusations are clearly covered by the foregoing description. The defendant contends that all of plaintiff's claims "arise out of" the alleged assault and are therefore subject to the exception but only if DeCoteau is a federal law enforcement officer. The Eighth Circuit has held that the so-called intentional torts exception does not preclude a suit for intentional infliction of emotional distress where the claimed underlying tortious conduct involved intentional interference with contract rights, misrepresentation, malicious prosecution, and abuse of process. *Gross v. United States*, 676 F.2d 295, 304 (8th Cir.1982).

> The Government mistakes particular items of damage to Gross' well-being for the tortious wrongs alleged in his complaint. Because the Federal Tort Claims Act does not give immunity for the type of activity in which the Government was here alleged to be involved, we hold that Gross' claim for damages is not barred by the intentional torts exception.

*Id.* (citations omitted). The underlying conduct here, namely assault and perhaps a battery, is clearly an intentional tort. However, the Eighth Circuit's holding in *Gross*, if still legally correct, may, in a proper case, require that a cause of action for intentional infliction of emotional distress not be defeated since it is not specifically listed in § 2680(h). It is not listed and Congress did nothing to change the law after *Gross*.

[¶ 14.] The Eighth Circuit's holding in *Gross* has been specifically rejected by the Tenth Circuit in *Metz v. United States*, 788 F.2d 1528, 1534 (11th Cir.1986) ("a cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to 'arise out of' an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim"). *See also Williamson v. U.S. Dept. of Agriculture*, 815 F.2d 368, 377 (5th Cir.1987). The Ninth Circuit has agreed with *Metz:*

> This circuit looks beyond the labels used to determine whether a proposed claim is barred. In this case, the claim for negligent infliction of emotional distress

is nothing more than a restatement of the slander claim, which is barred by section 2680(h). Put another way, the Government's actions that constitute a claim for slander are essential to Thomas–Lazear's claim for negligent infliction of emotional distress.

*Thomas–Lazear v. F.B.I.*, 851 F.2d 1202, 1207 (9th Cir.1988) (citations omitted).

[¶ 15.] *Metz* relied upon the United States Supreme Court's post-*Gross* decisions in *Block v. Neal*, 460 U.S. 289, 297, 103 S.Ct. 1089, 1094, 75 L.Ed.2d 67 (1983) (holding that § 2680(h) does not bar negligence claims where the government's intentional conduct is not essential to what the plaintiff claims is negligence), and *United States v. Shearer*, 473 U.S. 52, 57, 105 S.Ct. 3039, 3042, 87 L.Ed.2d 38 (1985) (claims "arising out of" the intentional torts of assault and battery are barred by § 2680(h)). The *Metz* court concluded:

> The meaning which we derive from the foregoing Supreme Court cases is that a cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to "arise out of" an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is "essential" to plaintiff's claim.

*Metz*, 788 F.2d at 1534.

[¶ 16.] Although this court is bound, of course, by Eighth Circuit precedent, *Gross* has essentially been overruled by later Supreme Court cases. It is clear that plaintiff's infliction of emotional distress claims arise out of DeCoteau's assault or battery or both and are thus subject to the intentional torts exception of § 2680(h). There is no other underlying conduct to support such claims. These claims are therefore subject to dismissal because this court has no jurisdiction over these intentional torts since DeCoteau is not a federal officer.

■ [¶ 17.] Assuming, however, that *Gross* remains good law in the Eighth Circuit, the court will discuss the law in South Dakota as to infliction of emotional distress. We must keep in mind that *Gross* dealt only with intentional infliction of emotional distress, holding that such a claim was not covered by the intentional torts exception. Plaintiff has alleged the intentional infliction of emotional distress. The elements required to establish this in South Dakota are well known. *See Tibke v. McDougall*, 479 N.W.2d 898 (S.D.1992). First, there must be an act by the defendant amounting to extreme and outrageous conduct; this is defined as "conduct exceeding all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind." *Tibke*, 479 N.W.2d at 907, quoting from *Groseth Intern., Inc. v. Tenneco, Inc.*, 410 N.W.2d 159, 169 (S.D.1987). To put it slightly differently, the conduct "must be so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Tibke*, 479 N.W.2d at 907. Second, there must be an intent on the part of the defendant to cause plaintiff severe emotional distress. Third, the defendant's conduct must be the cause-in-fact of plaintiff's distress. Fourth, the plaintiff must have suffered an extreme disabling emotional response to defendant's conduct.

[¶ 18.] The South Dakota Supreme Court relies upon the Restatement (Second) of Torts, § 46 cmt. h (1965) which provides:

> It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been suffi-

ciently extreme and outrageous to result in liability.

*Richardson v. East River Elec. Power Co-op., Inc.*, 531 N.W.2d 23, 27 (S.D.1995).

■ [¶ 19.] The allegations of the amended complaint are insufficient as a matter of law to meet the requirements of South Dakota law as to intentional infliction of emotional distress. In addition, the alleged conduct which is assumed to have occurred does not constitute conduct which is utterly intolerable in a civilized community; it was silly and childish but not so extreme in degree as to go beyond all possible grounds of decency. The conduct was not of a nature especially calculated to cause mental distress of a very serious kind. Under all the circumstances, the conduct was not extreme or outrageous. DeCoteau had no intention to cause plaintiff "severe emotional distress." No reasonable person would or could anticipate that such actions would cause anyone severe emotional distress. The plaintiff's claims as to intentional infliction of emotional distress do not state a cause of action even if such a cause of action is not barred by the intentional torts provision of the FTCA.

■ [¶ 20.] The plaintiff also advances a claim for negligent infliction of emotional distress. To do this, plaintiff must allege and show manifestation of physical symptoms. *See Wright v. Coca Cola Bottling Co.*, 414 N.W.2d 608, 609–10 (S.D.1987), *Nelson v. WEB Water Development Ass'n., Inc.*, 507 N.W.2d 691, 699 (S.D.1993) (a case in which I represented the plaintiff), and *First National Bank v. Drier*, 1998 SD 1, ¶ 12, 574 N.W.2d 597. The amended complaint does indeed allege "manifestation of physical symptoms." The evidence at this point appears to be insufficient but that is not the test on a motion to dismiss. Clinical depression is not, in itself, sufficient. A stress syndrome is not sufficient. Claimed tempo-

rary loss of sleep is not sufficient. Temporary loss of sleep could be the result of a myriad of things. Crying is not sufficient. Actual physical symptoms such as neck cramps could stem from many causes, including everyday activities. If this cause of action were to be allowed to go forward, competent expert medical testimony based on reasonable medical certainty or probability would ultimately be required to "link up" any physical manifestations claimed by plaintiff with the emotional distress. It would necessarily be beyond the common knowledge of the fact finder whether any such physical manifestations were caused by and were traceable to the claimed emotional distress. The plaintiff suffers from arthritis, a terrible disease that causes many symptoms and problems, including side effects from medicines prescribed. Plaintiff has apparently never sought medical attention for any physical manifestations claimed to be stemming from the emotional distress. She did see a psychologist but a psychologist would be unable to diagnose or treat physical problems. Such matters are beyond the scope of practice of a psychologist. The plaintiff testified that the only physical problem she now has is tingling in the neck when she talks about the incident. Having said all this, it is clear that the amended complaint does contain the necessary allegations as to a claim of negligent infliction of severe emotional distress with physical manifestations. At this point, nothing further is required. I find, however, that the claim for negligent infliction of emotional distress is nothing more than a restatement or "dressing up" of a claim grounded and founded on assault or battery or both. The claim must perish.

**B. Scope of Employment Requirement for Federal Tort Claim Act Liability.**

■ [¶ 21.] Defendant's second jurisdictional challenge is based upon the con-

tention that DeCoteau was not acting within the scope of his employment at the time of the alleged assaults. The amended complaint vests this court with jurisdiction pursuant to 28 U.S.C. § 1346. That statute reads, in pertinent part, "... the District Courts ... shall have exclusive jurisdiction of civil actions on claims against the United States ... for personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his employment ..." 28 U.S.C. § 1346(b). For this court to ultimately exert its jurisdiction pursuant to § 1346(b), the Court would have to find that DeCoteau was acting within the scope of his employment during the alleged assaults. For FTCA purposes, scope of employment determinations are to be made according to state law. *Id.; Primeaux v. United States*, 181 F.3d 876, 878 (8th Cir.1999) ("even if state law extends a private employer's vicarious liability to employee conduct not within the scope of employment, the government's FTCA liability remains limited to employee conduct within the scope of employment, as defined by state law"). *See Forrest City Mach. Works, Inc. v. United States*, 953 F.2d 1086, 1088 n. 5 (8th Cir.1992). Therefore, South Dakota law will control.

[¶ 22.] In determining South Dakota law on the scope of employment, this Court is guided by *Primeaux v. United States*, 181 F.3d 876 (8th Cir.1999),[2] *Red Elk v. United States*, 62 F.3d 1102 (8th Cir.1995), *United States v. Lushbough*, 200 F.2d 717 (8th Cir.1952), and *St. John v. United States*, 240 F.3d 671 (8th Cir.2001). *Primeaux*

was an FTCA case arising out of an alleged rape by a B.I.A. police officer in South Dakota. The Eighth Circuit noted that the South Dakota Supreme Court

> has long followed the agency principle "that a master cannot be held liable for his servant's acts or negligence beyond the scope of his employment, even though the injury could not have been committed without the facilities afforded to the servant by the master." *Morman v. Wagner*, 63 S.D. 547, 262 N.W. 78, 79 (1935). In *Morman*, the Court applied a rather general test for determining scope of employment: [I]f the act is for the benefit of the employer, either directly or indirectly, the act is within the general scope of the servant's employment, but if the act performed is not in any way connected with the service for which he is employed, but for his own particular and peculiar purposes, then the act is not within the scope of the employment. 262 N.W. at 79. In the later case of *Alberts v. Mutual Serv. Cas. Ins. Co.*, 80 S.D.303, 123 N.W.2d 96, 98–99 (1963), the Court adopted the Restatement's multi-factor test for determining whether employee conduct is within the scope of employment.

*Primeaux v. United States*, 181 F.3d at 879. This *en banc* Circuit opinion in *Primeaux* discussed and rejected any contention that apparent authority could form the basis of finding that an act was within the scope of employment for FTCA liability, distinguishing between apparent authority (which is based upon estoppel) and scope of employment (which is based upon the

**2.** On the first appeal, the district court's decision denying liability was remanded with instructions that the District Court take into consideration apparent authority as it is applied pursuant to South Dakota law. *Primeaux v. United States*, 102 F.3d 1458 (8th Cir.1996). The district judge still found no liability attaching to the government. In *Pri-*

*meaux v. United States*, 149 F.3d 897 (8th Cir.1998), that finding was reversed. That opinion was vacated for a rehearing *en banc*. *Primeaux v. United States*, 159 F.3d 1147 (8th Cir.1998). In *Primeaux v. United States*, 181 F.3d 876 (8th Cir.1999), the Eighth Circuit affirmed the district court, finding that the rape was not within the scope of employment.

employment relationship) as separate legal theories for imposing vicarious liability upon an employer. *Id.* at 880. *Primeaux* went on to explain the traditional foreseeability test:

> In *Lushbough,* an-off-duty surveyor trainee borrowed a government truck and negligently caused an accident while completing personal errands. We reversed an FTCA judgment against the United States, concluding it was "too clear for argument that at the time of the accident ... [the trainee] was not acting within the scope of his office or employment." 200 F.2d at 721. By contrast, in *Red Elk v. United States,* 62 F.3d 1102 (8th Cir.1995), an on-duty police officer detained a thirteen-year-old girl for a curfew violation and raped her in the back seat of his police car. We acknowledged that this criminal conduct was done to benefit the officer personally, not his government employer, but concluded it was foreseeable that on-duty police occasionally misuse their authority in this manner. In affirming a determination that the assault was within the scope of the police officer's employment, we expressly distinguished *Lushbough:* "In *Lushbough* the agent borrowed the principal's vehicle to run a purely personal errand unconnected with the principal and had an accident ... There is more in our present case, however, than just using the police vehicle." 62 F.3d at 1106.

*Primeaux,* 181 F.3d at 881–82.

[¶ 23.] In *Primeaux,* the district court had concluded the facts were somewhere between the facts in *Lushbough* and the facts in *Red Elk.* In *Primeaux,* an off-duty Rosebud Reservation tribal officer who was a federal officer was using a marked police car, returning from work-related training in New Mexico. He came upon the plaintiff whose car was stranded in a snow bank. He turned on his police lights as he pulled up to the plaintiff. He of-

fered her a ride, which she accepted. After they had traveled a short distance, the officer pulled on to a side road, ordered her out of the car, and raped her. The Eighth Circuit agreed with the district court that the officer's actions were not within the scope of his employment because the officer was unarmed, out of uniform, off-duty, outside his jurisdiction and gave Primeaux a ride because she was stranded, "the kind of assistance any citizen might offer—not to detain her as part of his law enforcement duties." *Primeaux,* 181 F.3d at 882. The Eighth Circuit concluded that the connection between the officer's government employment and his sexual assault was simply too remote and tenuous to be foreseeable to his employer. *Id.*

[¶ 24.] *St. John,* another rape case out of South Dakota involving a B.I.A. police officer, is the Eighth Circuit's most recent pronouncement of the application of South Dakota law on scope of employment.

Under South Dakota law, the scope of employment inquiry is based upon a foreseeability test that evaluates whether a sufficient nexus exists "between the agent's employment and the activity which actually caused the injury." *Leafgreen v. American Family Mutual Insurance Co.,* 393 N.W.2d 275, 280 (S.D. 1986) (*Leafgreen* ). In addition, South Dakota has adopted the Restatement (Second) of Agency (1958), including § 229, which focuses on the relationship of the employee's conduct to the employer's business. *See Deuchar v. Foland Ranch, Inc.,* 410 N.W.2d 177, 180 (S.D. 1987) (*Deuchar* ) (holding that South Dakota is guided by the principles articulated in the Restatement (Second) of Agency, including § 229). The Restatement also provides a list of factors to consider in determining whether conduct is "of the same general nature as that authorized, or incidental to the conduct

authorized" by an employer so that it falls within the scope of employment. *See id.* at 180–81 n. 2 (citing the Restatement (Second) of Agency § 229, including the following factors to include in the scope of employment analysis: whether the act is commonly done in the course of business; the time, place, and purpose of the act; whether the act is within the enterprise of the master; the similarity of the act done to the act authorized; whether the means of doing harm has been furnished by the master; and the extent of departure from the normal method of accomplishing an authorized result). Generally, the "act of an employee done to effect some independent purpose of his own is not within the scope of his employment." *United States v. Lushbough,* 200 F.2d 717, 720 (8th Cir.1952). Nor is conduct that is "so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business" considered within the scope of employment. *Id.* at 280–81.

*St. John,* 240 F.3d at 676–77.

▮▮▮ [¶ 25.] Defendant argues that, applying *Deuchar v. Foland Ranch, Inc.,* 410 N.W.2d 177, 181 (S.D.1987), workplace horseplay during break time as a matter of law constitutes a "frolic", that there is no "underlying purpose of furthering the employer's business", and that such horseplay is not performed in the course of employment. South Dakota law is noticeably sparse as it relates to employer liability for torts committed by employees engaging in horseplay or on a frolic. Applying the foreseeability factors set forth above and after surveying the pleadings, memorandum, and affidavits, the court concludes that there is enough factual support in the record to uphold jurisdiction as to this particular issue. Viewing the record as a whole, the Court finds enough factual support to conclude that the actions of DeCoteau in allegedly assaulting plaintiff with an air pistol in the break room of the police department while between calls may provide a sufficient nexus between his employment and the alleged assaults. It would be a factual issue or a mixed question of fact and law to be determined at trial if the case were to proceed to trial. There is no need to further explore the matter at this point, the court having determined that the action should be dismissed.

## C. Discretionary Function Exception to Federal Tort Claim Act Liability.

▮▮▮ [¶ 26.] Defendant raises the discretionary function exception as a defense to plaintiff's claims for negligent hiring and supervision. As a general rule, the United States, as a sovereign, cannot be sued without a waiver of its sovereign immunity. *Dykstra v. United States Bureau of Prisons,* 140 F.3d 791, 795 (8th Cir. 1998). The FTCA represents a limited waiver of that immunity and allows the United States to be sued, subject to various exceptions. *Tonelli v. United States,* 60 F.3d 492, 494 (8th Cir.1995). The discretionary function exception, 28 U.S.C. § 2680(a), is one such exception.

> The provisions of this chapter and § 1346(b) of this title shall not apply to: Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or a regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). If an alleged act falls within the *discretionary function exception,* a court is without subject matter jurisdiction. *Dykstra,* 140 F.3d at 795. Dismissal, then, would be warranted. *See* Fed. R.Civ.P. 12(b)(1).

[¶ 27.] In analyzing whether an alleged act or omission falls within the discretionary function exception, the United States Supreme Court has provided two guiding principles to assist the lower courts. *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). First, the alleged action must be a matter of choice for the acting employee. *Id.* "[I]f the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect." *Id.* at 536, 108 S.Ct. at 1959. Therefore, in order for the discretionary function exception to apply, the government employee must have made a choice.

[¶ 28.] The second guiding principle requires a court to determine whether the choice is of the kind that the discretionary exception was designed to shield. *Id.* This inquiry reflects the policy of Congress "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984). When engaging in this second inquiry, a court is to determine whether the judgment is grounded in social, economic, or political policy, and, if the choice is based on such policy considerations, then the discretionary exception will bar the claim. *Dykstra*, 140 F.3d at 795. The discretionary exception only insulates the federal government from liability in cases where a government employee makes a decision based upon considerations of public policy. *Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1959.

[¶ 29.] In *United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 1274–1275, 113 L.Ed.2d 335 (1991), the United States Supreme Court reiterated its conclusion that the discretionary function exception only applies when a decision has been made that is the result of public policy considerations. *Dykstra*, 140 F.3d at 795. At a very minimum, therefore, a governmental employee must actually make a decision, a decision that comes after the employee took into account some aspect of public policy. If no decision was made, or the decision was not predicated upon public policy, then the discretionary function exception does not apply. *See Gaubert*, 499 U.S. at 322, 111 S.Ct. at 1273; *Berkovitz*, 486 U.S. at 536–537, 108 S.Ct. at 1958–1959; *Varig Airlines*, 467 U.S. at 811, 104 S.Ct. at 2763; *Dykstra*, 140 F.3d at 795; *Tonelli*, 60 F.3d at 496.

[¶ 30.] The government can only invoke the discretionary function exception when a government employee's conduct is the product of "judgment or choice." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1959. The Eighth Circuit has held that the discretionary function exception precludes a cause of action for the alleged negligent hiring and selection of police officers, a matter based on judgment. *Red Elk*, 62 F.3d at 1107. Plaintiff has failed to cite any case or statute or refer to any facts in response to the defendant's assertion that the defendant cannot be held liable for negligently selecting and supervising its employees. Claims of negligent hiring and supervision are easily made. They could be made in any case where an employee has "done something wrong." On hindsight, an employer perhaps should not have employed a particular employee. The exception could easily swallow the rule and bring virtually anything under the FTCA. Defendant's motion to dismiss the claim of negligent hiring and supervision of DeCoteau should be granted.

## II. FAILURE TO STATE A CLAIM

[¶ 31.] Defendant moved to dismiss plaintiff's claims for unsafe workplace and

emotional distress on the grounds of failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6). I have already dealt with the emotional distress issues. As already explained, when considering a motion to dismiss, the district court must construe the complaint liberally and assume all factual allegations to be true.

## A. Failure To State A Claim For Unsafe Work Place.

[¶ 32.] In her amended complaint, plaintiff alleges defendant was negligent in failing to provide plaintiff with a safe and secure work environment. In judging claims brought under the FTCA "the law of the place where the act or omission occurred" will control. 28 U.S.C. § 1346(b); *see Dykstra v. United States Bureau of Prisons,* 140 F.3d 791, 796 n. 5 (8th Cir.1998). That place is South Dakota. In the absence of any reference in the amended complaint to the legal basis of a cause of action for unsafe work place, the defendant has concluded that plaintiff's cause of action is based upon the duty of an employer to provide working conditions which are reasonably safe and to warn of risks or unsafe conditions which the employer should realize the employee may not discover by the exercise of due care. *Platt v. Meier,* 83 S.D. 10, 153 N.W.2d 404 (1967). Plaintiff has not alleged in her amended complaint that the Tribe had knowledge of an unsafe workplace. In response to the motion to dismiss, the plaintiff has submitted an affidavit, contending that her employer knew that problems existed between plaintiff and DeCoteau, including that plaintiff had caused complaints to be made to the chief of police about DeCoteau's claimed rough treatment of plaintiff's son during an encounter of some kind.

[¶ 33.] The court is not entitled to consider plaintiff's affidavit in response to a motion to dismiss for failure to state a claim. Assuming, however, that the affidavit is correct, plaintiff's complaint is wholly devoid of any alleged essential element of a claim for an unsafe work place which would entitle her to relief on such a claim. The claim is therefore subject to dismissal. In addition, no employer with workers' compensation coverage, either through insurance or an approved self-insured plan, under South Dakota law, could be liable in tort to an employee for an "unsafe work place" other than as a matter of workers' compensation. Any such tort claim would be barred. It should be barred here as well. The alleged claim for an unsafe work place is, like the claim for negligent infliction of emotional distress, designed to overcome the intentional torts exception. It is a restatement or "dressing up" of a claim founded and grounded on assault or battery or both. The claim should be dismissed.

### ORDER

[¶ 34.] IT IS ORDERED that defendant's motion to dismiss, Doc. 16, should be and is granted.

[¶ 35.] Dated this 26th day of July, 2002.