**Blake L. LaVALLIE, Plaintiff,**

v.

**UNITED STATES of America; and the Bureau of Indian Affairs, Defendants.**

**No. A1–04–075.**

United States District Court, D. North Dakota, Southwestern Division.

Nov. 2, 2005.

William J. Delmore, Kelsch, Kelsch Ruff & Kranda, PLLP, Mandan, ND, for Plaintiff.

David L. Peterson, U.S. Attorney's Office, Bismarck, ND, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HOVLAND, Chief Judge.

Before the Court is the Defendants' Motion to Dismiss filed on August 10, 2005. For the reasons set forth below, the Defendants' motion is granted.

## I. BACKGROUND

The plaintiff, Blake L. LaVallie (LaVallie) filed suit under the Federal Tort Claims Act (FTCA), alleging Officer William Ebarb used excessive force when arresting him in the city of Fort Yates on June 6, 2000. LaVallie was arrested and charged with actual physical control of a motor vehicle while under the influence of alcoholic beverages, resisting arrest, and disorderly conduct.

On June 4, 2002, LaVallie filed an administrative claim with the Standing Rock Bureau of Indian Affairs (BIA) alleging that he was assaulted and battered by Officer Ebarb during the June 6, 2000, arrest. LaVallie's claim was denied on November 19, 2002. A request for reconsideration was filed on May 16, 2003, and denied on January 22, 2004. LaVallie filed this suit on June 22, 2004.

## II. LEGAL DISCUSSION

### A. STANDARD OF REVIEW

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Graning v. Sherburne County*, 172 F.3d .611, 614 (8th Cir.1999). A fact is "material" if it might affect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 .(1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376 (8th Cir.1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed. R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. FEDERAL TORT CLAIMS ACT

The Government seeks summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure for lack of subject

matter jurisdiction. LaVallie's claim arises under the Federal Tort Claims Act (FTCA). 28 U.S.C. §§ 1346(b), 2671–2680. Under the FTCA, the Government waives its immunity to:

Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officers" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680(h). In other words, the Government waives its sovereign immunity as to the enumerated list of intentional torts committed by federal law enforcement officers. The crux of Government's motion is that Officer Ebarb was not a federal law enforcement officer, and thus, LaVallie's claims must fail because the Government is immune and the Court lacks jurisdiction.

Eighth Circuit case law discussing whether a tribal law enforcement officer is a tribal officer or a federal officer is sparse. *See Locke v. United States,* 63 Fed.Appx. 971, 2003 WL 21212167 (8th Cir.2003) (unpublished, per curiam opinion affirming a lower court finding that the officer in question was not acting as a federal law enforcement officer). However, there are three cases out of the United States District Court for the District of South Dakota that the Court finds persuasive.

In *Locke v. United States,* 215 F.Supp.2d 1033(D.S.D.2002), a tribal police dispatcher brought an action under the FTCA against the Government, alleging that a tribal police officer assaulted her. The Government sought summary judgment, arguing that the fact the officer was not a federal law enforcement officer at the time of the alleged assaults divested the district court of jurisdiction. The district court found that the law enforcement functions of the tribe were funded pursuant to a "638 contract" with the B.I.A.[1] *Id.* at 1038. The district court in *Locke* analyzed several factors to reach its decision that the tribal officer was not a "federal law enforcement officer."

Plaintiff has failed to cite to any specific provision of law or set forth any non-conclusory facts in connection with her claim that [the officer] was a federal law enforcement officer at the time of the alleged assaults. *See Dry v. United States,* 235 F.3d 1249, 1257 (10th Cir. 2000). The affidavit of [the officer] is unchallenged to the effect that he has not received the necessary certification, enforces only tribal laws or ordinances, and is not a federal law enforcement officer. Plaintiff refers to the 638 contract which obligates the Tribe to "[p]rovide enforcement of all Federal, State, Tribal, and local Government laws ... in accordance with the Contractor's area of jurisdiction ..." This language does not, in and of itself, transform [the officer] into a federal law enforcement officer any more than it would trans-

---

1. "638 contracts" derive their name from Public Law 96–638 under the Indian Self-Determination Education Assistance Act ("Self-Determination Act") as authorized by 25 U.S.C. § 450f.

form him into a state law enforcement officer. [The officer] and plaintiff worked for the same employer, the Tribal police department. Plaintiff asserts that "in practice," tribal police officers would sometimes make arrests for violations of federal law and would accompany B.I.A. investigators in making arrests for violations of federal law or in executing search warrants. These allegations, assumed to be true in general and as to [the officer], do not sufficiently allege that [the officer] is a federal law enforcement officer. It is common knowledge that local police officers and county sheriffs or deputies assist tribal officials and federal officers as well on occasion and vice versa. Such assistance does not cause these other law enforcement officials to be federal law enforcement officers. Plaintiff has not put forth any facts which would suggest, much less show, that [the officer] was anything other than a Tribal police officer. [The plaintiff] has failed to meet her burden of proof as to this issue of jurisdiction. [The officer] is thus not excepted from the so-called intentional torts exception to the FTCA, 28 U.S.C. § 2680(h). He is not an officer of the United States. Therefore, the federal government is not liable as a matter of law for certain intentional torts by [the officer], including assault.

*Id.* at 1038. Two subsequent cases out of the District of South Dakota reached the same conclusion. *See Anderson v. United States,* Civ. 03–3022 (D.S.D. Dec. 30, 2004); *Mizner v. United States,* Civ. 02–3015 (D.S.D. Dec. 5, 2003). All of the South Dakota cases rely, in part, on the Tenth Circuit case of *Dry v. United States,* 235

F.3d 1249 (10th Cir.2000), wherein the Tenth Circuit held that FTCA claims against tribal law enforcement officers must fail as a matter of law because the Government has not waived its immunity from such suits. *See also Romero v. Peterson,* 930 F.2d 1502 (10th Cir.1991) (remanding for further fact finding to determine whether officers were tribal officers or federal officers); *Trujillo v. United States,* 313 F.Supp.2d 1146 (D.N.M.2003) (finding that the officers in question were not federal officers and that the United States was immune from liability for their alleged actions); *Vallo v. United States,* 298 F.Supp.2d 1231 (D.N.M.2003) (finding that officer was not a federal officer and that the *Dry* decision compelled dismissal).

The Government has provided several exhibits it contends establish that Officer Ebarb was a tribal police officer and not a federal law enforcement officer as the time of alleged assault. The "Cooperative Agreement Between the Bureau of Indian Affairs Law Enforcement and the Standing Rock Sioux Tribe" states, in part:

Nothing in this agreement shall be construed to cede any jurisdiction of either party; *to waive any immunities;* to modify the legal requirements for arrest or search and seizure; or to otherwise modify the legal right of any person to accomplish any act in violation of Federal or Tribal laws that would subject the parties to any liability.

*See* Docket No. 17, Exhibit 1. The Government also notes that Officer Ebarb's salary was funded through a United States Department of Justice COPS FAST grant program and a contribution from the Standing Rock Sioux Tribe ("Tribe").[2]

2. The COPS FAST grant program is funded by the United States Department of Justice through grants to local law enforcement agencies. In this case, the Standing Rock Sioux Tribe was eligible for funding under the Department of Justice COPS FAST grant and

was awarded a grant in the amount of $61,523 for a three-year period. The Tribe was to provide a matching share of 25%. In total, the grant and the Tribal contribution would fund the cost of hiring one officer for three years. *See* Docket No. 15, Exhibit 1.

The Government asserts that the Agreement does not give tribal officers the power to execute searches, to seize evidence, or to make arrests for violations of Federal law. The Government also cites to a March 9, 2000, letter from the tribal chairman informing Ebarb that his merit pay increase for his position as a "Tribal Police Officer with the COPS Program" was approved. *See* Docket No. 17, Exhibit 2. The Government asserts that if the receipt of COPS grant monies brought officers under the exceptions of the FTCA, then thousands of state, local, and tribal officers would be considered federal law enforcement officers.

The Government acknowledges that tribal officers and the BIA work closely together and in fact, the BIA provides "direct supervision" for tribal officers and that tribal officers would be trained at the BIA Police Academy. However, the Government contends that this relationship does not transform Officer Ebarb into a federal law enforcement officer.

LaVallie relies heavily on the fact the BIA conducted an administrative investigation into his complaint. LaVallie asserts that "[b]y investigating the conduct of an individual for which the BIA was thought to have liability, they represented he was considered a BIA employee and thus a federal officer for the purposes of the FTCA." *See* Docket No. 19, p. 2. LaVallie contends that the extensive entanglement of the BIA in the day-to-day operation of the tribal law enforcement leads to the conclusion that Officer Ebarb was a federal law enforcement officer. LaVallie points out that the BIA provides direct supervision of tribal officers including disciplinary action, provides training through the BIA Police Academy, and sets forth minimum hiring qualifications. LaVallie contends that the BIA has almost complete control of the tribal police. LaVallie also directs the Court's attention to a June 6, 2001, letter from Brent W. LaRocque,

Chief of the Internal Affairs and Inspection Division of the BIA in which LaRocque states LaVallie may "file a claim under the Federal Tort Claims Act." *See* Docket No. 19, Exhibit 1. Finally, LaVallie attempts to distinguish the case law cited by the Government by noting the current dispute does not include a "638 contract" and that the Agreement in this matter results in a higher level of involvement between the Tribe and the BIA. LaVallie argues that all of these factors support his contention that Officer Ebarb was acting as a federal law enforcement officer and, as a result, the Government is not immune from suit.

Both parties agree that the threshold question is whether Officer Ebarb was an "investigative or law enforcement officer[ ]" of the United States Government." 28 U.S.C. § 2680(h). An "investigative or law enforcement officer" is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h).

It is undisputed that at the time of the alleged assault, Officer Ebarb was attempting to enforce tribal law and that LaVallie was ultimately arrested and charged with a variety of tribal offenses. It is also undisputed that the Tribe and the BIA entered into an agreement which clearly stated, in part, that "[n]othing in this agreement shall be construed to . . . *to waive any immunities.*" *See* Docket No. 17, Exhibit 1. Although the parties dispute the significance of the cooperation or entanglement between the Tribal police department and the BIA, both agree that the BIA provides supervision and training of tribal officers.

■ After carefully reviewing the evidence set forth by both parties, the Court finds that LaVallie has not meet the burden of establishing that Officer Ebarb was

a federal law enforcement officer. The overwhelming weight of the evidence presented establishes that Officer Ebarb was a tribal police officer. Officer Ebarb was attempting to enforce tribal law when his encounter with LaVallie took place. The agreement between the Tribe and the BIA did not confer federal law enforcement powers to officers hired through the COPS FAST grant program. Nor did LaVallie present evidence to establish that Officer Ebarb routinely, or even sporadically, acted to enforce federal law. In addition, the agreement between the Tribe and the BIA specifically addresses the issue of immunity and clearly states that the agreement was not to be construed to waive either entities' immunity. Finally, the letter from Chief LaRocque to LaVallie, although misleading, is of no legal consequence. The United States cannot be bound by an unauthorized action or misrepresentation made by its agents. *See Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

■ The Court notes that the cooperation and interaction between the BIA and the tribal police department is extensive, and that a casual observer may well believe them to be one and the same. However, for purposes of determining whether the United States Government has waived its immunity from suit, the Court is required to strictly construe such waivers in favor of the Government. *See United States v. Nordic Village*, 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) ("Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed." (internal quotations omitted)); *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text ... and will not be implied.").

The Court expressly finds, as a matter of law, that Officer Ebarb was a tribal officer, and thus, the Government is immune from suit as to any alleged tortious actions taken by Officer Ebarb. Accordingly, the Court is without jurisdiction over this matter. The Court finds that is unnecessary to address the Government's alternative arguments for granting summary judgment.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Defendants' Motion for Summary Judgment. (Docket No. 17). Let judgment be entered accordingly.

**IT IS SO ORDERED.**